### 76917. JORDAN v. THE STATE.
(371 SE2d 245)

DEEN, Presiding Judge.

The appellant, Michael Jordan, was convicted of two counts of kidnapping, three counts of aggravated assault, false imprisonment, aggravated sodomy, rape, and possession of a firearm by a convicted felon. Two different victims were involved. On appeal, Jordan contends that the trial court erred in admitting Jordan's custodial statement into evidence, and that the evidence does not support the convictions.

On the night of June 1, 1986, the first victim was at a car wash adjoining a small shopping center, when Jordan approached her and asked if she could make change for him. When she told him no, he walked away and she proceeded to wash her truck. Jordan then grabbed her from behind, holding a knife to the back of her head, and forced her into his car. He drove to an area behind the shopping center, where, with knife still in hand, he forced her to place her mouth on his penis and briefly had sexual intercourse with her. He then let her get out of the car and drove off.

On the evening of September 1, 1986, Jordan was killing time at a convenience store with the second victim and the second victim's boyfriend, who worked at the store. (They were recent acquaintances.) Jordan asked for a ride home so that he could get a "painkiller" and then return to the store. The victim agreed to drive him there. Jordan had her go the long way around, explaining that he did

not want to drive past his grandmother's house. When they got to his house, he ran in and out, and got back in the car. Shortly afterwards, on the way back to the store, Jordan grabbed the steering wheel, causing the car to go into a ditch. They got out of the car, at which time the victim observed that a gun fell out of Jordan's pocket. Jordan ran towards the victim with the gun; the victim screamed; and Jordan warned her that she better not scream anymore. Jordan grabbed, pushed, and shoved her off the road into some woods, where he led her through a series of trails.

Eventually they came upon a pasture, where the victim observed bones lying on the side of the trail, and Jordan told her that they were the bones of other girls he had brought there. (The bones were actually those of cows.) Further on they came upon a house, and Jordan instructed the victim to stay put while he went in for a minute. When Jordan approached the house, the victim ran back towards the woods, but Jordan caught up with her, holding a bag. Jordan then led her to a barn, threw the bag up into the loft, and made the victim get up there. Jordan removed a blanket from the bag, spread it out, and told the victim to sit on it. She asked him to take her home but he refused. He then removed a skirt from the bag and told the victim to put it on. When she refused, he told her that if she did not put the skirt on, he would do it for her. Jordan took out the gun from his pocket, pushed her back, and started to unzip and remove her pants. She resisted and Jordan desisted. Also while they were in the loft, Jordan removed some handcuffs from the bag and asked the victim how she would like to be tied up with them; he pointed the gun at the victim's feet and pulled the trigger twice; and he threw a knife at the board next to which the victim stood.

They eventually got down from the loft, and Jordan told the victim to go down in the well. When she refused, he went down in it. The victim started to run off, and Jordan got out of the well, chased her down, and pushed her back to the well. Then he got back in the well; the victim ran off again; and Jordan got out of the well, chased her down, and pushed her back to the well again. The victim told Jordan to take her home, and this time he agreed.

They began walking and soon afterwards heard someone hollering. The victim hollered back. The other voice turned out to be that of her boyfriend who was searching the area for her. The boyfriend and his companion forcibly transported Jordan back to the convenience store, although they had to stop on the way because Jordan tossed his gun onto the roadside. Back at the store, the police were summoned and Jordan was arrested. Later that day at the sheriff's department, Jordan gave a statement, which was subsequently admitted into evidence during his trial.

Because of the similarities of Jordan's appearance and the

description of the assailant given by the victim of the June incident, the deputy sheriff later arranged a photo line-up including Jordan's picture and showed it to the first victim. She immediately and positively identified Jordan, as she did at a subsequent regular line-up. The first victim also identified Jordan's knife, found at the barn where he held the second victim captive, as like the one used by her assailant. *Held*:

1. A *Jackson-Denno* hearing was held to determine the admissibility of the custodial statement given by Jordan. At that hearing, the interrogating police officer testified that he advised Jordan of his *Miranda* rights; that Jordan signed a waiver of those rights; and that no threats or promises were made to obtain Jordan's statement. Jordan, however, testified that the officer had told him that "things could become rough" if he did not give a statement. In this type of situation, where the testimonial evidence concerning the factual circumstances of a statement is in direct conflict, the trial court is the trier of fact, whose resolution of factual issues such as the credibility of witnesses shall not be overturned unless clearly erroneous. *Mathews v. State*, 183 Ga. App. 224 (358 SE2d 639) (1987). We do not find the trial court's finding in this case to be clearly erroneous.

2. Viewing the evidence in the light most favorable to the verdict, the evidence authorized a rational trier of fact to find Jordan guilty beyond a reasonable doubt of the offenses for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED JUNE 29, 1988.

*Stephen A. Delaney*, for appellant.
*Rafe Banks III, District Attorney, Wallace W. Rogers, Jr., Assistant District Attorney*, for appellee.