A99A0415. MONTIJO v. THE STATE.
A99A0416. FLORES v. THE STATE.
(520 SE2d 24)

SMITH, Judge.

Adolfo Flores, Oscar Flores, and Jesus Montijo were charged by special presentment with armed robbery and burglary. Montijo and Adolfo Flores were also charged with possession of a firearm during the commission of a crime. A jury convicted Adolfo Flores and Montijo of armed robbery, burglary, and possession of a firearm during the commission of a crime. The jury found Oscar Flores guilty of armed robbery and burglary. Motions for new trial or for judgment notwithstanding the verdict filed by Montijo and Oscar Flores were denied, and these two defendants appeal.[1] We find no error, and we affirm.

1. In Case No. A99A0415, Montijo contends that the evidence was insufficient to convict him.

Construed in support of the jury's verdict, evidence was presented that Montijo knocked on the victim's door and asked if she knew a person named "Monty" and then if she knew "Nicky"; the victim told Montijo that Nicky worked with her husband. Two days

---

[1] Adolfo Flores is not a party to this appeal.

later, Montijo again knocked at her door and asked for Nicky Nicholson. The victim gave Montijo directions to this person's home and then saw Montijo's "eyes glaring behind the door." She looked toward the area where Montijo was staring and saw a shadow behind the door. Another man, later identified as Adolfo Flores, but who was wearing a bandanna on his face during the incident, pushed the victim into her bathroom and pointed a gun at her head. He brought the victim's young daughter into the bathroom and pointed the gun at her as well. He asked a question concerning Nicky Nicholson's whereabouts and walked out of the bathroom. The victim remained inside the bathroom while several items were taken from her home, including a television, VCR, camcorder, stereo, car stereo, camera, and some tools and jewelry. One particular piece of jewelry was a gold-colored charm in the shape of a dollar sign.

After the men left the victim's home, the police were called, and a car driven by Adolfo Flores was stopped later that same night, based on a description provided by the victim. Montijo was a passenger inside the car. During the ensuing investigation, Montijo gave a statement, which was read to the jury. Montijo's statement recited that he went to the victim's door and asked "about Nicky," and another individual wearing a green scarf then pulled open the victim's door and went inside, making the victim and her daughter go into the bathroom. According to Montijo's statement, when the other individual came back into the hallway he was carrying a gun, and Montijo stood outside while others removed a television, cable box, and VCR from the home. He stated that he did not "know what they did with the stuff that they took from the lady's house." Although the victim, who remained in the bathroom during the 20 to 30 minutes it took for the robbery to be completed, heard "a lot of movement" inside her home, she testified that Montijo remained "standing at the door" and acknowledged that as far as she knew, he never entered her home.

Montijo argues that the evidence showed only his mere presence at the scene of the crime. According to Montijo, no evidence was presented that he entered the victim's home or participated in the theft. He also contends that no evidence showed he had or displayed any weapon and thus did not take the victim's property "by use of an offensive weapon," an element of armed robbery under OCGA § 16-8-41 (a). That Code section provides that an individual commits "armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon" or any instrument appearing to be such a weapon. Id.

Under OCGA § 16-2-20 (b) (3), an individual is a party to a crime if he or she "[i]ntentionally aids or abets in the commission of the

crime." And although mere presence at the scene of the commission of a crime is not sufficient to convict a person of being a party to that crime, "presence, companionship, and conduct before and after the offense are circumstances from which . . . participation in the criminal intent may be inferred." (Citation and punctuation omitted.) *James v. State*, 227 Ga. App. 907, 908 (1) (490 SE2d 556) (1997). See also *Burks v. State*, 268 Ga. 504 (491 SE2d 368) (1997).

We cannot agree with Montijo that the evidence showed only his mere presence. Montijo's actions before, during, and after Adolfo Flores entered the victim's home constituted evidence of his participation in the crime. The victim saw him "glaring" in the direction from which Adolfo Flores pushed open her door and entered her home. We note the victim's testimony that Montijo did not appear to be surprised by Adolfo Flores's behavior. After he entered the victim's home, Adolfo Flores asked her about "Nicky," a name Montijo had twice mentioned to the victim during the past two days, once during the past few moments. Montijo said in his statement that he saw that the individual inside the victim's home had a gun. Furthermore, Montijo remained at the door of the home while items were taken from it, and he left with Adolfo Flores. We also note that Oscar Flores, who was in the car, was summoned by Montijo to the door to help carry the burglarized items to the car. Viewed in the light most favorable to the jury's verdict, this evidence was sufficient to enable a rational trier of fact to find Montijo guilty of the crimes charged against him.

2. In Case No. A99A0416, Oscar Flores raises several contentions. He first argues that the trial court erred in denying his motion for directed verdict of acquittal at the close of the State's case, because according to Oscar Flores, the only evidence presented against him was his uncorroborated confession.

As discussed above, a few hours after the incident at the victim's home occurred, a car driven by Adolfo Flores was stopped, and Adolfo Flores and Montijo, a passenger in the car, were arrested. Over a month later, Oscar Flores was arrested on an unrelated matter, but during an in-custody interrogation, he made a statement, with the assistance of a Spanish-speaking interpreter, concerning the incident in this case. This statement, as redacted and read to the jury, recited in relevant part:

> [O]thers . . . picked me up and we went to a trailer on a hill. Another went up to the door and was talking to a lady and after a few minutes others went inside the lady's trailer and one came out and told me to come to the door. When I went to the door another started handing me stuff out of the house like a VCR and a camcorder and some other things.

And others carried the T.V. set and put it in the car. The only thing I got to keep was a dollar sign charm that was gold in color and I threw it away because it wasn't real gold. The other stuff we took to Adolfo's trailer and unloaded it there and then they took me home.

After the State rested, Oscar Flores moved for a directed verdict of acquittal, which was denied by the trial court. He then testified on his own behalf concerning the events of March 19, 1997. According to Oscar Flores, Adolfo Flores picked him up from the trailer of a friend. Adolfo drove to a trailer on a hill and asked Montijo to go "ask for someone named Nicky." Oscar remained inside the car while Adolfo and Montijo went to the front door, and several minutes passed before he was called to the door by Montijo. Oscar testified that he went to the door, and Adolfo handed him a television and told him to put it in the car. He stated that he returned to the front door and "noticed that something was going on" and found the fact that Adolfo was taking "many things" from the house "kind of strange." He admitted that he believed Adolfo "was taking things that were not his." Despite this belief, Oscar continued to place other items from the home inside the car.

Oscar Flores argues that the trial court should have granted his motion for directed verdict of acquittal, contending that the only evidence the State introduced against him during its case in chief was his uncorroborated confession. The law is well settled that an accused's confession, "uncorroborated by any other evidence, shall not justify a conviction." OCGA § 24-3-53. But it is equally well established that "[a] conviction may be had on a confession although corroborated only by proof of the corpus delicti. . . . Corroboration in any material particular satisfies the requirements of the law." (Citation and punctuation omitted.) *Bigham v. State*, 222 Ga. App. 353, 354 (474 SE2d 254) (1996).

Here, the victim's trial testimony showed she was robbed and several items were taken from her home, even though she saw only two men on the evening of the incident. Stolen items included a VCR and camcorder, which Oscar Flores admitted removing from the home, a television, which he observed being placed into the car, and notably, a "dollar sign" charm, which he admitted to receiving and later discarding. The victim's testimony, which corresponded with much of Oscar Flores's confession, "was sufficient to establish the corpus delicti, i.e., that the crimes actually occurred." *Bigham*, supra. Oscar Flores's statement was sufficiently corroborated by other evidence, and the evidence was sufficient to convict him.

3. Oscar Flores contends the trial court erred in denying his motion to sever parties. Because the State did not seek the death

penalty, whether to sever Oscar Flores's case from those of his co-defendants was a matter within the trial court's discretion. See, e.g., *Felder v. State*, 270 Ga. 641, 644 (5) (514 SE2d 416) (1999). In deciding a motion to sever, a trial court must consider three issues: (1) whether a joint trial will cause confusion concerning the evidence or law; (2) whether danger exists that evidence implicating one defendant will be considered against other defendants, in spite of limiting instructions; and (3) whether co-defendants will press antagonistic defenses. *Bryant v. State*, 270 Ga. 266, 269 (2) (507 SE2d 451) (1998).

(a) With respect to the first requirement, in this case the number of defendants tried together simply "was not so great as to create confusion of evidence and the law. [Cit.] The law applicable to each defendant was substantially the same, and there is no showing that presentation of evidence regarding the defendants led to confusion in the minds of the jury. [Cit.]" (Punctuation omitted.) *Isaac v. State*, 269 Ga. 875, 879 (7) (505 SE2d 480) (1998). Oscar Flores was charged with the same crimes as Adolfo Flores and Montijo, with the exception of the charge of possession of a firearm during the commission of a felony. And although two of the defendants shared the last name, "Flores," our review of the transcript reveals that no serious confusion could have existed as to the actions of Adolfo, as opposed to those of Oscar.

Oscar Flores also argues that questions by the jury showed juror confusion concerning his participation in the incident. During deliberations, the jury sent two notes to the trial judge, one reciting, "We'd like to be charged on armed robbery. Is an individual guilty of taking goods obtained in an armed robbery? What will convict one of armed robbery?" The trial court recharged the jury on several issues, including mere presence at the scene of participation in a crime, the requirement that the State prove participation in the crimes beyond a reasonable doubt, parties to a crime, and the definition of armed robbery. The court then instructed the jury to send another note if any members had more questions. A second note recited that the jury "need[ed] to have typed the definition of party to a crime." In response, the trial court provided a copy of the jury charge, pointing out that portion addressing parties to a crime. While these questions may have sought clarification on the law related to the charges against Oscar Flores, we cannot conclude that they showed juror confusion concerning the factual issue of Oscar Flores's involvement in the crimes.[2]

---

[2] We also note Oscar Flores's contention that he believed Adolfo Flores would testify, placing "blame which had been attributed to him upon appellant, further causing confusion to the jury," and that in an effort to avoid this confusion, Oscar Flores felt compelled to testify. But Adolfo Flores did not testify.

(b) As for the second requirement stated in *Bryant*, supra, some danger exists that the statements of Adolfo Flores and Montijo may have implicated Oscar Flores indirectly. Under *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), "the right of confrontation is violated when several co-defendants are all tried jointly, one defendant's confession is used to implicate another defendant in the crime, and the confessor does not take the stand." (Punctuation omitted.) *McDonald v. State*, 210 Ga. App. 689, 690 (436 SE2d 811) (1993). The statements of Oscar Flores's co-defendants, as redacted and read to the jury, did not directly implicate Oscar Flores by mentioning his name. Montijo's actual statement mentioned a "Hispanic guy — who I don't wish to name," and when his statement was read to the jury, the statement was redacted to describe only "others" or "another" or "other guys." Similarly, Adolfo Flores's statement was redacted to remove any mention of Oscar Flores. That statement, as read to the jury, was as follows:

> Adolfo Flores states that he only dropped [others] off at Maria's house and waited in the car. Adolfo stated that they gave him the T.V. set for driving them down there and dropping them off and he took the T.V. to a girl's house named Karen Bailey. Adolfo states that [others] got the idea to go to Maria's house and told him . . . (Adolfo) that she was usually alone and that it would be easy to get. Adolfo states that the gun that was used at Maria's house does belong to him but he let [others] use the gun as soon as [that person] told him what they were going to do.

Such redactions, however, are not permissible as a means of avoiding the *Bruton* proscription against use of statements made by non-testifying co-defendants that incriminate the defendant on trial. As stated in *Hanifa v. State*, 269 Ga. 797 (505 SE2d 731) (1998), while it is not entirely clear that the "generic terms" used in the statements referred directly to Oscar Flores, "the jury was notified by the use of the terms . . . that a name had been redacted, making it similar to *Bruton*'s unredacted confessions so as to be a constitutional violation. [Cit.]" Id. at 804 (2).

But also as in *Hanifa*, we conclude that any *Bruton* violation was not harmful and does not require reversal. *Hanifa*, supra. At trial, Oscar Flores admitted participation in the criminal enterprise and knowledge of the fact that others were taking items from the victim's home. Because evidence other than the statements of Montijo and Adolfo Flores "overwhelmingly implicated" Oscar Flores by placing him at the scene of the robbery and showing his participation, "we conclude that any *Bruton* error in admitting [those statements] was

harmless, and therefore renders harmless any error in failing to grant [Oscar Flores's] motion to sever." *Guimond v. State*, 259 Ga. 752, 755 (3) (386 SE2d 158) (1989).

(c) Finally, it appears that the defenses of the co-defendants may have been antagonistic toward one another. Oscar Flores testified that he was merely a passenger and that he did not realize anything wrong was occurring until he saw items being taken from the victim's home. He also testified that he feared Adolfo. Adolfo Flores contended, however, that he was merely the driver and knew nothing of others' criminal plans, and in his original statement (which was not read in its entirety to the jury), Adolfo clearly implicated Oscar by stating, among other things, that robbing the victim was Oscar's idea and that he allowed Oscar to use his gun.

But "[t]he existence of purported antagonistic defenses between two co-indictees is not sufficient to warrant the grant of a separate trial, absent a showing of harm. [Cit.]" *Davis v. State*, 266 Ga. 801, 802 (3) (471 SE2d 191) (1996). As discussed above, Oscar Flores testified at trial, essentially admitting his participation in the robbery, and the evidence overwhelmingly implicated him, regardless of the statements of Adolfo and Montijo.

4. Oscar Flores contends the trial court erred in refusing to continue the trial, claiming that his counsel did not have time to prepare adequately for trial. We find no error. Trial counsel entered an appearance July 2, 1997, and the case was set for trial July 28, 1997. On the morning of trial, he filed his motion to sever and his challenges to the arrays of the grand and traverse juries. The trial judge then continued the case until August 4, 1997, and during the hearing on the challenges to the array held just before trial, defense counsel argued that he did not have adequate time to prepare. We find no error in the trial court's refusal to further continue the trial. Counsel had at least four weeks to prepare for this case, which was not overly complicated, and even "a two-week preparation period is not inadequate as a matter of law. [Cits.]" *Roland v. State*, 266 Ga. 545, 546 (3) (468 SE2d 378) (1996).

5. Oscar Flores argues that the trial court erroneously failed to dismiss the indictment against him and grant his motions challenging the arrays of the grand and traverse juries.

To establish a prima facie case of jury discrimination, a defendant must show the following:

> (1) that a distinctive group or recognizable class in the community has been excluded from the jury list; (2) that an opportunity for discrimination against this group existed from the source of the jury list; and (3) that use of the infected source produced a significant disparity between the

percentages found present in the source and those actually appearing on the jury panels. [Cits.]

*Bowen v. State*, 244 Ga. 495, 500 (4) (260 SE2d 855) (1979). Assuming without deciding that Oscar Flores showed that Hispanics are a distinctive, recognizable class in Whitfield County, where the trial occurred, he has failed to show the second and third requirements. Oscar Flores presented evidence showing that out of 5,042 eligible jurors in Whitfield County as of June 17, 1997, only 17 Hispanic individuals were listed, but the voter registration list he submitted showed no breakdown of eligible Hispanic voters. He failed to show an opportunity for discrimination from the source of the jury list (apparently, the voter registration list) or that use of the infected source produced any significant disparity between percentages in the source and the jury panels. Indeed, in Oscar Flores's brief on appeal, his trial counsel acknowledges the failure to make these required showings, claiming that he was not afforded sufficient time to prepare for the motion because the trial court denied his motion for continuance. But as discussed above, we find no merit in Flores's contention that four weeks preparation was insufficient as a matter of law.

6. Oscar Flores contends the trial court erroneously refused to excuse a juror for cause. In response to a question on voir dire, this juror stated that she "might, depending on the circumstances," give more credence to the testimony of a law enforcement official than to other witnesses. When asked whether she would automatically assume a police officer's version of an incident was correct, the juror stated that she "would consider it carefully" but added an equivocal response.[3] Counsel went on to ask whether the juror felt that the defendant "would be obligated to prove something" or whether "the defendant would have to put forth more proof than . . . the policeman." The State objected on the ground that these questions involved the law that the court would later charge, and the trial court asked the juror whether she could "just take the evidence and evaluate it as it comes from the witness stand." The juror responded, "I think so, yes." Defense counsel continued to question the juror, however, asking if she believed the defendant was required to introduce evidence or "do something to show that he is not guilty." The juror responded affirmatively. But the court then asked her whether she "would have any trouble following the law" as explained by the court, whether she had "preconceived notions" of how any case should "come out," and whether she would "have any trouble" following the instruction that she was not to draw a harmful inference from a defendant's failure to

---

[3] Counsel asked, "But right now you tend to believe you probably would?" The juror responded, "Yes and no."

testify. The juror answered "no" to these questions.

"Whether to strike a juror for cause lies within the sound discretion of the trial court, and the fact that a juror has expressed a belief in the credibility of a witness does not require that he be excused for cause." (Citations omitted.) *Brown v. State*, 268 Ga. 354, 356 (3) (490 SE2d 75) (1997). See also *Mize v. State*, 269 Ga. 646, 651-652 (6) (a) (501 SE2d 219) (1998). With respect to this juror's statements concerning law enforcement officers, she indicated she could simply evaluate the evidence as it "comes from the witness stand" and could follow the instructions provided by the trial court. As for the juror's response concerning whether a defendant was required to introduce evidence on his own behalf, we note that such inquiries were inappropriate on voir dire. "It has long been the law . . . that it is not within the purview of voir dire to inquire into technical legal questions, especially those ultimately involving the presumption of innocence, which are more properly the subject of a legal charge by the trial court." (Citations and punctuation omitted.) *Moak v. State*, 222 Ga. App. 36, 38 (2) (473 SE2d 576) (1996). Despite this improper inquiry by trial counsel, however, the juror indicated that she could follow the law as explained by the court. We find no abuse of discretion in the trial court's refusal to excuse this juror for cause.

7. Oscar Flores contends that his in-custody statement was erroneously admitted. He first contends that the statement was not voluntarily given. Oscar Flores testified at trial that an interrogating officer "told him that if he didn't talk he was going to give him fifty years." During the *Jackson-Denno* hearing, however, this officer, Detective Wayne Saylors, and the Spanish-speaking deputy who translated for Saylors and Oscar Flores during the interview both unequivocally testified that Flores's statement was voluntarily given, and that no threats or promises were made.

When testimony concerning "the factual circumstances of a statement is in direct conflict, the trial court is the trier of fact, whose resolution of factual issues such as the credibility of witnesses shall not be overturned unless clearly erroneous. [Cit.]" *Jordan v. State*, 187 Ga. App. 687, 689 (1) (371 SE2d 245) (1988). "Unless clearly erroneous, a trial court's findings about factual determinations and credibility relating to the admissibility of an inculpatory statement will be upheld on appeal. [Cit.]" (Emphasis omitted.) *Berry v. State*, 267 Ga. 605, 610 (7) (481 SE2d 203) (1997). Given the testimony of the officers concerning the voluntariness of Oscar Flores's statement, we cannot say that the trial court clearly erred in finding that the statement was voluntarily given.

Oscar Flores also argues that his statement was improperly admitted because the interpreter who translated during his in-custody interview, Edgardo Nieves, did not understand his dialect

and was incapable of giving an exact word-for-word translation. Nieves testified that during Oscar Flores's in-custody interview, Detective Saylors wrote down questions, which he translated to Flores, and Nieves then translated Flores's Spanish responses into English "word for word." Nieves later acknowledged, on cross-examination, that he was from Puerto Rico and was not fluent in Mexican dialects and that he was "not capable of giving an exact word for word translation because the dialects are different." He also testified, however, that he understood everything that Flores told him and that he read Oscar Flores's statement to him in Spanish after the interview and that Flores said the statement was correct. Furthermore, Oscar Flores was cross-examined about his statement. Although he stated that certain things were written in the statement that "I didn't say," he admitted telling Saylors and Nieves that he accompanied Montijo and Adolfo Flores to a "trailer on a hill," that they handed him items from inside the trailer, that he kept a dollar sign charm, and that he helped take the items from the victim's trailer to Adolfo's trailer. Under these circumstances, we cannot say that the admission of Oscar Flores's statement was error.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED JUNE 25, 1999.

*Michael A. Corbin*, for appellant (case no. A99A0415).
*Robert D. Jenkins*, for appellant (case no. A99A0416).
*Kermit N. McManus, District Attorney, Dixon A. Lackey III, Assistant District Attorney*, for appellee.