A00A0152. YORK v. THE STATE.
A00A0153. McCALL v. THE STATE.
A00A0154. MATHIS v. THE STATE.
A00A0155. CRAWFORD v. THE STATE.
A00A0352. HILL v. THE STATE.
(528 SE2d 823)

ELDRIDGE, Judge.
We have consolidated these five interrelated criminal appeals. Viewed to support the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the facts are these:
On the evening of November 25, 1996, Derrick Andre Crawford arrived at his home, parked his Land Rover beside his Ford Explorer in the attached garage, exited the vehicle, and headed toward the kitchen door. The three Rottweiler dogs in his fenced back yard began

---

barking as Damon Jason McCall, Antonio York, Bernard Mathis, and Antonio Hill drove up in a Nissan Pathfinder. Leaving the motor running, the four jumped out of the Pathfinder and ran toward Crawford. They were wearing dark ski masks, and all four had guns. They forced Crawford into his kitchen. Crawford's wife, Shunda Green, was in the kitchen; a stove burner was on, and a "strange" smell was in the air. When Green saw the armed men, she and her two small children began screaming. In the resulting chaos, Green quickly called 911 and left the telephone line dangling open, as McCall herded Crawford, Green, and the children into the living room.

The 911 operator relayed to patrol officers all pertinent information regarding a robbery in progress, and police officers began to arrive on the scene. Meanwhile, inside the house, there was general chaos, which included a great deal of yelling, demands for money, and demands to know "where the stuff was at." Crawford repeatedly refused to tell the men where the money and "the stuff" were, so McCall shot Crawford. Crawford then gave McCall the information he wanted, and McCall was apprehended shortly afterwards attempting to flee in Crawford's Land Rover with a kilo brick (1,000 grams) of powder cocaine wrapped in brown paper with a horseshoe logo on it. The Smith & Wesson .380 caliber pistol that McCall used to shoot Crawford was lying beside the kilo on the front seat of the Land Rover. McCall had a significant quantity of blood on his shoes and pants; he also had Crawford's wallet in his pants pocket, as well as nine "hits" of crack cocaine.

When York, Hill, and Mathis realized the police had arrived, panic set in. They demanded to know a way out of the house. They forced Crawford, Green, and the children into the basement and tried to exit the basement door. However, simultaneously, the police approached the basement door and forced it open. Green shouted "They shot him. They shot him," as the police burst in. York, Hill, and Mathis tried to run back up the basement steps. York made it up the stairs and was apprehended in the living room; Hill was stopped midstairs; and Mathis was apprehended before he could reach the stairs. After Mathis was handcuffed, he told the arresting officer, "You boys are going to get medals for this. This is the biggest drug bust. There's three keys in the house upstairs."

The police obtained a search warrant for Crawford's house. Three dark ski masks and three weapons were found discarded in various locations in the kitchen, living room, and basement. Ten thousand dollars in cash was found in a dresser drawer in an upstairs bedroom. A brown paper wrapper with a horseshoe logo was found in the kitchen trash can. Another 57.3 grams of cocaine were found in a clear plastic bag in the kitchen cabinet near the stove, along with some cooking pots and a digital scale.

In his statement to the police, McCall admitted shooting Crawford but claimed it was in self-defense. He claimed that Crawford invited him into the house to discuss a prior business deal, and they began to argue; that he shot Crawford because he thought Crawford was reaching for a weapon and he "felt in fear of [his] life"; that he shot Crawford with a gun he fortuitously discovered in the pillows of Crawford's couch; that, "after the little shoot," Crawford started giving him items, like his wallet and the hits of cocaine found in McCall's pants pocket; and that he was "not in a clear frame of mind," so he just took the items Crawford voluntarily gave to him. McCall stated that there was no armed robbery; that York, Hill, and Mathis had nothing to do with anything that occurred; and that the police should "ask my friends they didn't have nothing to do with this."

Crawford and Green, along with McCall, York, Hill, and Mathis, were indicted for two separate counts of trafficking in cocaine based on the plastic bag of cocaine found in the kitchen cabinet and the kilo brick of cocaine recovered from the Land Rover. In addition, McCall, York, Hill, and Mathis were each charged with one count of armed robbery, two counts of aggravated assault, and three counts of burglary. McCall also faced one count of possession of cocaine for the nine hits of crack cocaine recovered from his pants pocket.

A Cobb County jury found Crawford and Green guilty on both counts of trafficking in cocaine; they found McCall, York, Hill, and Mathis not guilty on both counts of trafficking in cocaine. The jury found McCall, York, Hill, and Mathis guilty as charged on all remaining counts of the indictment. The five men appeal from their convictions.[1] *Held*:

1. We find the evidence sufficient for a rational trier of fact to have found appellants guilty of the offenses for which they were convicted. *Jackson v. Virginia*, supra.

(a) Despite claims of "mere presence," Crawford's trial testimony, as well as other State's evidence, showed that York, Hill, and Mathis each had guns, wore ski masks, and aided McCall in the burglary, armed robbery, and aggravated assaults of Crawford and Green. OCGA § 16-2-20 (parties to a crime); *Burks v. State*, 268 Ga. 504, 505 (491 SE2d 368) (1997). Crawford's testimony further showed that the men were not "invited" into the residence, contrary to their assertions on appeal.

(b) We also reject Crawford's contention that no evidence linked him to the drugs found in the Land Rover and the kitchen. It was reasonable for the jury to determine that the kilo in the Land Rover was removed by McCall from Crawford's home without permission;

---

[1] Green's appeal is not before us.

likewise the 57.3 grams of cocaine were found in Crawford's kitchen cabinet. An inference can be made that the cocaine in Crawford's home belonged to him. *Carthern v. State*, 238 Ga. App. 670, 672 (519 SE2d 490) (1999). The jury apparently made that inference, and that was their prerogative.

2. Appellants raise various *Bruton*[2] issues. As per *Bruton*, a defendant's Sixth Amendment right of confrontation is violated when: (a) co-defendants are tried jointly; (b) one co-defendant's statement is used to implicate the other co-defendant in the crime; and (c) the co-defendant who made the implicating statement employs his Fifth Amendment right not to testify and thus does not take the stand to face cross-examination about the statement. *McDonald v. State*, 210 Ga. App. 689, 690 (436 SE2d 811) (1993).

Recognizing the above as law, we cannot help but question the tactical wisdom of the State in joining together for trial interrelated Cases A and B, when the result is to make the *victim* in Case A a co-defendant in Case B. If the victim/co-defendant does not testify because of Fifth Amendment concerns arising from Case B, the State may be left to prove Case A though the victim/co-defendant's pretrial statements and identification. Under *Hanifa v. State*, 269 Ga. 797, 800 (2) (505 SE2d 731) (1998), a *Bruton* Confrontation Clause violation may be inevitable since cross-examination of the victim/co-defendant is impossible.

In the face of a potential *Bruton* violation, the issue then becomes: (1) whether the implicating statement falls within a "firmly rooted" exception to the hearsay rule that will allow its admission, despite Confrontation Clause issues;[3] (2) whether the statement was sufficiently redacted with the use of general terms which do not "obviously refer directly to someone";[4] or (3) whether any *Bruton* violation can be considered harmless.[5] With these principles in mind we turn to the specifics of appellants' *Bruton* allegations.

---

[2] *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

[3] *Lilly v. Virginia*, 527 U. S. 116 (119 SC 1887, 1894, 144 LE2d 117) (1999) ("We have allowed the admission of statements falling within a firmly rooted hearsay exception since the Court's recognition . . . that the Framers of the Sixth Amendment obviously intended to respect certain unquestionable rules of evidence in drafting the Confrontation Clause.") (citations and punctuation omitted).

[4] *Gray v. Maryland*, 523 U. S. 185 (118 SC 1151, 1157, 140 LE2d 294) (1998) (disapproving a redaction that substitutes "blank" or "delete" for a co-defendant's name and approving general redaction terms: "Why could the witness not, instead, have said: 'Question: Who was in the group that beat Stacey? Answer: Me and a few other guys' "). But cf. *Montijo v. State*, 238 Ga. App. 696, 701 (520 SE2d 24) (1999) (where a panel of this Court found the general redaction term "other guys" unacceptable).

[5] *Cruz v. New York*, 481 U. S. 186 (107 SC 1714, 95 LE2d 162) (1987) (the co-defendant's confession may be considered on appeal in assessing whether any Confrontation Clause violation was harmless). See also *Hanifa v. State*, supra at 803 ("violation might be rendered harmless by the introduction of the defendant's interlocking confession").

(a) McCall asserts a *Bruton* violation in the admission of co-defendant York's statement identifying McCall as the shooter.

Co-defendant York gave a statement to the police that there was no armed robbery or burglary; that Crawford invited the men inside his house to discuss business between him and McCall; that no one, including McCall, was carrying a gun when they entered the house; that McCall and Crawford began arguing; that McCall shot Crawford; that he did not know why McCall shot Crawford; and that he, York, did not have any idea what was going on at the residence. York also told the interviewing officer that McCall wanted to talk to him in order to exonerate York, Hill, and Mathis.

Thereafter, McCall gave a statement to the police which exonerated York, Hill, and Mathis; confirmed exactly what York said; and added details that raised his self-defense claim with regard to his shooting of Crawford. The evidence also showed that McCall, York, Hill, and Mathis were together in the holding cell at the jail for a long period of time. It was there that McCall told York and the others that he would tell the police that he was responsible for the shooting and that "my friends they didn't have nothing to do with this." Neither McCall nor York testified at trial, but their statements were introduced.

The introduction of York's statement naming McCall as the shooter was a *Bruton* violation because: York could not be cross-examined about the statement; the statement was not redacted with general terms in order to remove reference to any particular person; and the statement had no independent basis for admission. *Hanifa v. State,* supra; *Gray v. Maryland,* 523 U. S. 185 (118 SC 1151, 140 LE2d 294) (1998); *Lilly v. Virginia,* 527 U. S. 116 (119 SC 1887, 144 LE2d 117) (1999). However, we conclude that such violation was harmless beyond a reasonable doubt. McCall's confession was not only "interlocking," but a mirror image of York's statement; McCall unequivocally claimed responsibility for the shooting, albeit in self-defense, and denied that any armed robbery had occurred or that he and his friends were in any way culpable of any crime. Moreover, McCall was apprehended on the scene; his shoes were covered in blood; and he had been in possession of the weapon used to shoot Crawford. Crawford made an in-court identification of McCall as the one who shot him. "[York's] statement did not implicate [McCall] in the crimes more than this other evidence. Accordingly, we find that the admission of the statement was harmless error. [Cits.]" *Rooks v. State,* 238 Ga. App. 177, 181 (518 SE2d 179) (1999).

(b) At the time of the incident, the lead investigator asked Green what happened. There, on the scene, she told the officer that three masked men had forced their way into her home, demanded money and "the stuff," and shot her husband. She did not know who the men

were and did not identify any person as being a perpetrator of the crime.

We find no *Bruton* issues with regard to Green's statement. "The court could have properly allowed the investigating officer to testify about what the victim told him when he arrived at the scene of the incident under the res gestae exception to the hearsay rule." *Jones v. State*, 226 Ga. App. 608, 609 (487 SE2d 89) (1997). Res gestae is a "firmly rooted" exception to the hearsay rule and thus provides an independent basis for the admission of Green's statement. *Williams v. State*, 202 Ga. App. 82, 84 (413 SE2d 256) (1991); *Lilly v. Virginia*, 119 SC at 1894. In addition, since Green did not know who committed the crimes and named no names, her statement raises no *Bruton* concerns as to any one of the appellants. No *Bruton* violation occurs unless the nontestifying co-defendant's statement, standing alone, clearly implicates a defendant. *Owen v. State*, 266 Ga. 312, 314 (4) (467 SE2d 325) (1996).

(c) Likewise, Green's excited utterance "They shot him. They shot him," had an independent basis for admission. She made that statement as the police came through the basement door. As such, the statement was res gestae. *Lilly v. Virginia*, supra. In addition, since Green did not know who the intruders were and named no one, her statement, standing alone, implicates no one. *Owen v. State*, supra at 314 (4).

(d) Co-defendant Mathis made a spontaneous statement as the arresting officer picked him up from the basement floor that "[y]ou boys are going to get medals for this. This is the biggest drug bust. There's three keys in the house upstairs." Crawford contends that the statement implicated him in violation of *Bruton*. We disagree. The statement, spontaneously made on the scene at the time of arrest, was res gestae and thus admissible. *Lilly v. Virginia*, supra; *Williams v. State*, supra at 84. Further, Mathis' statement made no mention about to whom the drugs belonged or how they got into the house. The statement did not name Crawford or imply that Crawford knew about the drugs. Standing alone, Mathis' statement implicated no one. Again, "[t]here is no *Bruton* violation unless the non-testifying co-defendant's statement, standing alone, clearly implicates the defendant." (Citations and punctuation omitted.) *Adams v. State*, 231 Ga. App. 279, 288 (499 SE2d 105) (1998).

(e) We will not consider Mathis' *Bruton* challenge to the admission of his own statement. The rights guaranteed by the Sixth Amendment are personal. See, e.g., *Stevens v. State*, 247 Ga. 698, 704 (7) (278 SE2d 398) (1981). Mathis may not invoke the Sixth Amendment confrontation rights of others to challenge the admissibility of his own statement. Id.

(f) Crawford testified at trial and faced cross-examination.

Accordingly, the admission of his pretrial statement was not a *Bruton* violation. *McDonald v. State,* supra at 691.

3. For several reasons, appellants claim error in the trial court's denial of their joint motion to sever. On review, we find no error.

The severance of a co-defendant's trial is within the sound discretion of the trial court. Its decision will not be disturbed unless there is an abuse of that discretion. OCGA § 17-8-4; *Dixon v. State,* 268 Ga. 81, 83 (485 SE2d 480) (1997).

> A defendant desiring severance has the burden of demonstrating more than the possibility that a separate trial would provide him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process in the absence of severance.

(Citation omitted.) *Berry v. State,* 267 Ga. 605, 611 (9) (481 SE2d 203) (1997).

(a) Appellants contend that the failure to sever requires reversal because Crawford's status as a co-defendant rendered them unable to impeach him with his prior drug conviction.

(i) It does not appear that this issue was raised as a basis for appellants' pretrial severance motion, presumably because, at the time, it was unknown whether any co-defendant would testify. And, after Crawford took the stand, appellants do not direct our attention to any place in the record where they renewed their motion to sever in order to raise this issue and secure the trial court's ruling thereon. Our review shows none. Accordingly, this issue is waived on appeal. See, e.g., *Pattman v. State,* 236 Ga. App. 786, 787 (2) (513 SE2d 761) (1999).

(ii) Crawford was not called by the State, and the State's case was not dependent upon Crawford's testimony. Compare *Morris v. State,* 204 Ga. App. 437, 438 (419 SE2d 733) (1992). Moreover, to prove that Crawford was a convicted drug dealer would have been of "questionable value" to appellants in defending against charges that they invaded Crawford's home to steal drugs and money and where the evidence showed that they had removed a kilo of cocaine from Crawford's home. See *Thomas v. State,* 199 Ga. App. 586, 591 (405 SE2d 512) (1991), rev'd on other grounds, 261 Ga. 854 (413 SE2d 196) (1992). Further, the State's evidence clearly established that Crawford was a drug dealer, as reflected by the jury's verdict. Thus, the prior drug conviction would have added little to further impugn Crawford's already tattered general character. Under these circumstances, we conclude that appellants have failed to make "a showing of clear prejudice that is required to warrant a severance, with the result that the trial court did not manifestly abuse its discretion in

refusing to grant appellant[s] a separate trial. [Cit.]" *Ledbetter v. State*, 202 Ga. App. 524, 525 (2) (414 SE2d 737) (1992).

(b) Hill contends he was prejudiced by evidence that Crawford and McCall had guns. But the evidence was that all of the perpetrators, including Hill, had guns. And a corresponding number of guns were found discarded in places throughout the house where the perpetrators, including Hill, had been. Accordingly, this contention presents no basis for finding the trial court abused its discretion in denying severance.

(c) McCall contends that his co-defendants presented "antagonistic defenses." However, his co-defendants presented no defense, other than (1) reliance on their own pretrial assertions that there was no armed robbery and (2) reliance on McCall's pretrial statement that the co-defendants had nothing to do with the shooting. Since McCall also claimed there was no armed robbery and voluntarily took responsibility for the shooting, albeit in self-defense, the defenses were not "antagonistic."

(d) Crawford contends there was no "common scheme" between his trafficking charges and the acts of McCall, York, Hill, and Mathis so as to warrant joinder of the offenses for trial. However, pretermitting the factual validity of this argument, "common scheme" is not the only rationale for joinder and, thus, not the only rationale for denying severance. "The trial court does not abuse its discretion in denying a severance motion where evidence of one charge would be admissible in the trial of the other." *Hunter v. State*, 237 Ga. App. 803, 804-805 (1) (517 SE2d 534) (1999). In that regard, evidence that Crawford kept large quantities of cocaine in his home went to the motive for the other co-defendants' armed invasion of that home and the subsequent shooting of Crawford. Such evidence showing motive is relevant and admissible. *Coker v. State*, 207 Ga. App. 482, 483 (428 SE2d 578) (1993). Likewise, the police investigation of the acts of McCall, York, Hill, and Mathis explains the way in which Crawford was arrested for the trafficking offenses and is, thus, admissible: "Testimony of the arresting officer with reference to the legal investigation and circumstances surrounding the arrest is authorized as original evidence under OCGA § 24-3-2." *Ward v. State*, 193 Ga. App. 137, 138-139 (2) (387 SE2d 150) (1989). Since Crawford's offenses would have been admissible upon the trial of the other co-defendants' offenses, and vice versa, the trial court did not abuse its discretion in denying severance. *Dennis v. State*, 263 Ga. 257, 260 (6) (430 SE2d 742) (1993).

(e) Crawford claims that severance should have been granted because the State was allowed to introduce Crawford's bad character through the statement of co-defendant McCall. However, Crawford does not direct our attention to any place in the record where he

raised this issue as a basis for severance. Accordingly, this issue is waived on appeal. *Pattman v. State*, supra at 786.

Further, even if preserved, the admission of McCall's statement does not show harm requiring severance. The statement was redacted to remove any reference to Crawford and McCall's "business" as involving narcotics. From McCall's statement, standing alone, Crawford and McCall's argument could have been over a money loan. Moreover, by its verdict, the jury clearly did not believe those portions of McCall's statement claiming self-defense, including assertions that Crawford reached for a gun to shoot McCall; that Crawford had a bad temper; that Crawford might have killed him; and that McCall feared for his life. Accordingly, even if such assertions incidentally placed Crawford's character at issue, the jury's rejection of them renders their admission harmless.

(f) Our decision in Division 1, makes it unnecessary to consider appellants' claims that *Bruton* violations warranted severance.

4. Appellants claim error in the trial court's denial of their *Batson*[6] motion with regard to prospective juror Sheryl Drakeford. We find no error.

> In reviewing the trial court's disposition of a *Batson* motion, we must bear in mind that the prosecutor's explanation need not justify a challenge for cause, but must be neutral, related to the case to be tried, and reasonably specific. The trial court's decision rests largely upon assessment of the prosecutor's state of mind and credibility; it therefore lies peculiarly within a trial judge's province. The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous.

(Citation and punctuation omitted.) *Smith v. State*, 236 Ga. App. 122, 123 (2) (511 SE2d 223) (1999).

(a) A review of the record shows that on May 20, 1997, the second day of jury selection, Drakeford was late to court to such an extent the trial court was forced to admonish her: "Ms. Drakeford, you're twenty minutes late. You've kept all of these people waiting since nine o'clock. Now, when I tell you to be here at nine, or any other time, please be here unless providentially prohibited, okay?" The next day, May 21, 1997, Drakeford was even later; the prosecutor stated that he struck her because:

> She was twenty-two minutes late — eighteen minutes late yesterday and lectured by the court, as was only one other

---

[6] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

juror during the three days of jury selection, that's Ms. Amie Izaguirre, who was also struck by the State for being late. It shows an inattention to the case, it shows a disrespect for the court, and for the parties in the case.

The trial court found the State's reasons to be race-neutral and denied appellants' *Batson* motion. To that end, the trial court specifically noted that the prosecutor very seldom exercised peremptory strikes against black jurors, and the court saw "no reason to impugn the State's motive" in this case.

The State's reasons were facially race-neutral. Equally important, the trial court found no pretext in the State's reasons. Appellants have failed to show error in the court's credibility determination. Accordingly, we cannot say the trial court's denial of the *Batson* motion was clearly erroneous.[7]

(b) Appellants also contend that the trial court did not complete the "three step process," because the court failed to make a separate determination on the record that the defense had failed to prove discriminatory intent. This determination, however, was implicit in the trial court's denial of the *Batson* motion and does not require a separate, specific finding on the record. See, e.g., *Walker v. State*, 271 Ga. 328, 330 (3) (519 SE2d 670) (1999); *Palmer v. State*, 271 Ga. 234, 237 (3) (517 SE2d 502) (1999); *Dennis v. State*, 238 Ga. App. 343, 345 (4) (518 SE2d 745) (1999).

5. Appellants claim error in four of the trial court's final jury instructions. Upon review, however, we find no error.

(a) Crawford claims the trial court erred by using the phrase "moral and reasonable certainty" in its charge on reasonable doubt. However, "there was no reversible error because the charge viewed in its entirety repeatedly and accurately conveyed to the jury the concept of reasonable doubt." (Citations and punctuation omitted.) *Hart v. State*, 238 Ga. App. 325, 327 (2) (d) (517 SE2d 790) (1999).

(b) The trial court's charge that "[i]f the State fails to prove a particular individual Defendant's guilt beyond a reasonable doubt, it would be your duty to acquit that Defendant," coupled with the court's charge that "[t]he burden of proof rests upon the State to prove every material allegation of the indictment and every essential

---

[7] It is unclear from the briefs whether appellants also challenge the State's use of a peremptory strike against juror Izaguirre. However, to the extent that such issue is raised on appeal, we find it waived by appellants' failure to establish a record as to whether Izaguirre belonged to a cognizable racial or ethnic group. *Greene v. State*, 266 Ga. 439, 443 (469 SE2d 129) (1996), rev'd on other grounds, *Greene v. Georgia*, 519 U. S. 145 (117 SC 578, 136 LE2d 507) (1996). Nor did appellants secure a ruling from the trial court as to the strike of Izaguirre. See *Laney v. State*, 271 Ga. 194, 195-196 (3) (515 SE2d 610) (1999). In fact, other than to mention Izaguirre's name, no further argument was presented to the trial court with regard to the State's strike of this prospective juror.

element of the crime charged," meets the due process standard set by the United States Supreme Court. *In re Winship*, 397 U. S. 358 (90 SC 1068, 25 LE2d 368) (1970).

(c) The trial court charged the jury to "consider with great care and caution the evidence of any statement made by a Defendant." Crawford contends that such charge could be interpreted to refer to his trial testimony and, thus, "destroy[ ] his only defense." This argument is without merit. "It is a fundamental rule . . . that jury instructions must be . . . considered as a whole in determining whether the charge contained error." (Citations and punctuation omitted.) *Walls v. State*, 233 Ga. App. 601, 604 (504 SE2d 471) (1998). Here, the challenged jury charge, taken in context with the charge as a whole, clearly refers to an out-of-court statement/confession given by a defendant to the police and impresses upon the jury its duty to make a credibility determination with regard to such statement/confession.

For the same reason, we find meritless Crawford's claim that the charge shifted the burden of proof, thereby "forcing Crawford to prove his testimony was true." No fair reading of the challenged jury instruction, taken in context with the charge as a whole, could mislead a jury into thinking the instruction referred to Crawford's trial testimony. "There is no error where it is unlikely that the instructions considered as a whole would mislead a jury of ordinary intelligence." (Citations and punctuation omitted.) *Pullins v. State*, 232 Ga. App. 267 (1) (a) (501 SE2d 612) (1998).

(d) We have reviewed the trial court's charge on criminal intent. We reject appellants' contention that such charge was burden shifting in violation of *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979). The court clearly instructed the jury that, while criminal intent "may be inferred" from proven facts, "[w]hether or not you draw such inference is a matter solely within your discretion." As such, the charge stated only a permissive inference and was not burden shifting. *Morris v. State*, 196 Ga. App. 811 (2) (397 SE2d 159) (1990).

6. York claims a violation of *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), in that the police took his statement after he had invoked his right to counsel.

"Under *Edwards*, authorities may not interrogate a suspect in custody who has requested an attorney, unless counsel is made available to the accused *or* the accused initiates further communication with the police." (Emphasis in original.) *Mosher v. State*, 268 Ga. 555, 558 (491 SE2d 348) (1997).

In that regard, evidence adduced at the *Jackson-Denno*[8] hearing

---

[8] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

showed that York invoked his right to counsel immediately upon his arrest on November 25, 1996. Several hours later in the morning hours of November 26, 1996, Cobb County Police Sergeant Chenowith was at the jail to retrieve the appellants' clothing for evidentiary purposes. York approached Chenowith and said "I'd like to speak with you." York was given *Miranda*[9] warnings, which included his right to speak to an attorney. York waived his rights and gave a statement to the police. Later that day, York sent word through a jail deputy that he wished to speak to Cobb Police Detective Peluso. Peluso also gave York *Miranda* warnings. York waived his rights and gave a videotaped statement to the police. York did not testify at the *Jackson-Denno* hearing or produce evidence to refute the officers' version of events.

The trial court found York's statement voluntary and admissible under *Miranda*, which includes the right to have counsel present during custodial interrogation. We find no error in this ruling. The trial court sits as the factfinder in a *Jackson-Denno* hearing, and its resolution of factual issues will be upheld by the appellate court unless it is clearly erroneous. *Higginbotham v. State*, 207 Ga. App. 424 (1) (428 SE2d 592) (1993). Construing the evidence most strongly to support the trial court's denial of York's *Jackson-Denno* motion, we conclude that York initiated further conversation with the officers and, "during the course of such initiated conversation, exercised a free and voluntary waiver of his rights." *Underwood v. State*, 218 Ga. App. 530, 533 (2) (462 SE2d 434) (1995).

7. Crawford filed a motion to suppress both the kilo of cocaine found in the Land Rover and the 57.3 grams of cocaine found in the kitchen cabinet. He claims that there was insufficient probable cause to issue a warrant to search his home and vehicle for drugs. We disagree.

The affidavit in support of the warrant, as well as testimony at trial, showed that officers had responded to the scene of a home invasion robbery based on a 911 call made by resident Green; that during the investigation of the incident, Green had informed the officers that the robbers were demanding "the stuff" just prior to removal of the object ultimately found in Crawford's Land Rover; and that based on the observations of an experienced police officer, Officer Stein, the object in Crawford's Land Rover appeared to be a wrapped kilo brick of cocaine.[10] Moreover, the police were in possession of the information from Mathis that there were "three keys in the house upstairs."

---

[9] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[10] Stein testified at trial that, in his experience, kilos of cocaine come packaged in wrapped bricks like the one he saw in the Land Rover. See *Giles v. State*, 197 Ga. App. 895, 897 (2) (400 SE2d 368) (1990).

In that regard, the attesting officer also gave oral testimony, telling the magistrate that it appeared to him "that the entire incident was obviously a drug ripoff, in my opinion, based on my experience." The attesting officer related to the magistrate,

> [t]he totality of the circumstances there were that we had a home invasion robbery, an obvious home invasion robbery, where men had come in and tried to rob these folks. They were demanding, according to Ms. Green, money — they wanted to know where's the money, where the stuff was. We knew that there was already a suspected large quantity of cocaine involved with the scene. Because of all those things it was obvious to me that the robbers were after money and drug contraband.

In determining the sufficiency of an affidavit to support the issuance of a search warrant, the Supreme Court in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), adopted the totality of the circumstances test:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

(Citations and punctuation omitted.) *State v. Law*, 208 Ga. App. 744, 745 (432 SE2d 110) (1993). We conclude, based on the totality of the circumstances, that the information in the affidavit — as well as that presented to the magistrate orally — provided a sufficient basis for finding probable cause. "Observations by fellow officers of government engaged in a common investigation are a reliable basis for a warrant applied for by one of their number." (Citations and punctuation omitted.) *Lewis v. State*, 234 Ga. App. 873, 876 (508 SE2d 218) (1998). Further, information provided by police officers, arising out of an official investigation, may be used to establish probable cause for a search warrant. *Pollard v. State*, 236 Ga. 587, 589 (224 SE2d 420) (1976); see also *United States v. Ventresca*, 380 U. S. 102, 111 (85 SC 741, 13 LE2d 684) (1965).

Here, there was sufficient information to provide probable cause for the search warrant to issue based on Stein's belief, from his police experience, that the package in the Land Rover was a kilo brick of

cocaine; the totality of the acts that comprised the home invasion, including the shooting of Crawford and the subsequent removal of the package from the residence; the statement from Green that the robbers were looking for "the stuff"; and the information that there were additional drugs in the house. Contrary to Crawford's assertions, it is not fatal to the search warrant that there is nothing in the affidavit that states how Stein could tell it was cocaine. "A search warrant affidavit is not insufficient merely because it fails to show how the informant knew that the substance he saw was a narcotic." *State v. Hill*, 135 Ga. App. 214, 216 (217 SE2d 190) (1975); *State v. Law*, supra.

8. Crawford contends the trial court erred in sentencing him on both counts of trafficking, because his possession of both the kilo of cocaine found in the Land Rover and the 57.3 grams of cocaine found in the kitchen cabinet was part of one continuous act and that simply because the drugs were found in two separate locations does not alter the fact that there was only one drug, one intent, and one incident of trafficking in cocaine. The State, on the other hand, argues that the cocaine found in the Land Rover had a different chemical composition from that found in the kitchen, thus making it two, separate, indictable drug possessions.[11]

This appears to be an issue of first impression. We find illuminating the State's concession during sentencing that "had the State been a little short," it would have sought to combine the two packages, regardless of their different chemical compositions, in order to reach a trafficking weight.[12] However, apparently being flush (as it were) with cocaine in the instant case, the State chose to indict the cocaine packages separately in order to seek two trafficking charges. The State claims that such is merely a "charging decision." We cannot agree.

The fact that the State could combine the two drugs if it were "short" belies its argument that the packages of cocaine are, in fact, "different" drugs. Moreover, the State's reliance on our decision in *Lawrence v. State*, 227 Ga. App. 70, 71 (2) (487 SE2d 608) (1997), is misplaced. There, the cocaine was the same, but the charged offenses were different, and the defendant sold some of the cocaine and retained the rest for his personal use. "If a person intends to distribute only a designated part of narcotics which are possessed, both the offense of possession and sale may be punished." (Citation and punctuation omitted.) Id. at 72 (2).

Here, however, the drugs are the same, and the offenses are the

---

[11] The kilo brick was 77 percent pure cocaine and cut with hydrochloride; the 57.3 grams were 80 percent pure and cut with a different agent.

[12] Minimum weight for trafficking in cocaine is 28 grams. OCGA § 16-13-31 (a) (1).

same. Under the facts of this case, Crawford was trafficking in cocaine. He was not trafficking in cocaine twice. His possession and control of all of the cocaine in his home at the time of the incident were part of one continuous criminal act. This conclusion is consistent with our holding that,

> for separate offenses charged in one indictment to carry separate punishments, they must rest on distinct criminal acts. If they were committed at the same time and place and parts of a continuous criminal act, and inspired by the same criminal intent, they are susceptible of only one punishment.

(Citation, punctuation and emphasis omitted.) *Hubbard v. State*, 168 Ga. App. 778, 779 (2) (310 SE2d 556) (1983). Accordingly, Crawford's conviction for trafficking in cocaine on Count 9 merges into his conviction for trafficking in cocaine on Count 8. His sentence on Count 9 is vacated.

*Judgments affirmed. Sentence on Count 9 vacated in Case No. A00A0155. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 21, 2000 —

*Gregory A. Hicks, James K. Luttrell*, for appellant (case no. A00A0152).
*Carlton C. Carter*, for appellant (case no. A00A0153).
*Lawrence W. Daniel*, for appellant (case no. A00A0154).
Bernard Mathis, *pro se*.
*Zell & Zell, Rodney S. Zell*, for appellant (case no. A00A0155).
*Victor A. Cuvo*, for appellant (case no. A00A0352).
*Patrick H. Head, District Attorney, Andrew J. Saliba, Debra H. Bernes, Maria B. Golick, Assistant District Attorneys*, for appellee.