## A98A1569. WILLIAMS v. THE STATE.
### (504 SE2d 53)

BLACKBURN, Judge.

Robert Donnell Williams appeals his conviction of armed robbery (two counts), kidnapping (four counts), aggravated assault (two counts), possession of a firearm during the commission of a crime (four counts), and possession of a firearm by a convicted felon, following a jury trial. Williams was tried with co-defendants Donnie Boone and James Courtney. Williams contends the evidence adduced was insufficient to support the verdict and that the trial court erred in denying his motion for a directed verdict and in admitting certain evidence. We disagree and affirm.

1. On appeal we view the evidence in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. We neither weigh the evidence nor determine witness credibility. *Grant v. State,* 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990). We determine whether, after viewing the evidence in this light, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Viewed in this light, the record reveals the following pertinent facts:

Around 11:00 p.m. on June 26, 1994, a Damon's restaurant in Augusta, Richmond County, Georgia, was robbed. Shortly after completing her closing duties, employee Patricia Sheppard left the restaurant through the back door. She got into her car and drove it behind the restaurant and parked next to the dumpster. As she was removing a box from the trunk of her car and throwing it into the dumpster, a man came up behind her. The man grabbed her, put a gun to her head, and ordered her back inside the restaurant. As she was being pushed toward the door, Sheppard noticed another man getting inside her car. Because Sheppard could not open the back door, she knocked on it until her co-worker, Darean Jordan, unlocked the door and let her in. The robber pushed Sheppard inside the building, demanding that she keep walking. He took Jordan's keys and ordered them to take him to the safe or he would shoot them. Shep-

pard noticed that another man followed them into the restaurant. She saw this man throw a towel over the surveillance camera — a camera that would not have been visible upon entry. The robbers ordered Jordan and three other closing employees — Michael Vidal, Sarah Romeo, and Daniel Troup — to move into the office. Sheppard managed to slip away during the commotion and hide in another part of the restaurant.

Upon entering the office, the robbers told Romeo to put the evening's proceeds into a plastic bag the robbers had brought with them. The robbers took the evening's $7,000 in receipts, which consisted of cash (including a $1,000 bill), several $10 rolls of quarters, and numerous credit card receipts. After filling the bag, one of the robbers grabbed Romeo by the arm and said "You're going with me." He told the other employees not to move or he would shoot Romeo. On their way out of the restaurant, the robbers locked Romeo into a closet with the Damon's restaurant keys. In addition to the evening's receipts, the robbers took Sheppard's Cadillac, her purse, and her cell phone.

The Damon's employees could not identify the robbers. The two who were observed inside the restaurant were described as black males wearing dark clothing and stocking masks.

Shortly after 11:00 p.m., Jay Watkins, a man who resided near Damon's, noticed a two-door silver-grey car parked along the road with its interior light on. As he drove by the car, he noticed that the driver's door was ajar and that the driver was standing outside the car. His suspicions aroused, Watkins wrote down the car's tag number. Fifteen minutes later, on his way back home, he noticed a Cadillac with its trunk open abandoned in the same area. Watkins also wrote down the tag number of this car. When he returned home, he called the police. The police determined that the abandoned Cadillac was Sheppard's. They found a roll of quarters and a stocking mask in the Cadillac.

Suspecting that the silver-grey car may have been involved in the robbery, the police located the car's owner, Valerie Davis, and obtained a warrant to search her car and her residence. The police found a 9 mm bullet, a wallet belonging to Donnie Boone, and a large number of quarters in Davis' car. They found five $20 bills in her purse. Davis told police and testified at trial that she received the money from Boone, her cousin. She loaned her car to Boone that evening so that he and his friends, James Courtney and Donnell Williams, could go out. Davis also said that she, Williams, Boone, and Courtney had spent the afternoon together, visiting at the home of Michelle Dunn. Around midnight, Boone returned Davis' car to her at Dunn's house. Davis then drove Boone to a hotel. When she dropped him off, she saw Williams leaning over the second floor

balcony of the hotel.

The police then spoke with Michelle Dunn, James Courtney's girl friend, who confirmed in part Davis' account of the evening. Upon a consent search of Dunn's residence, the investigators found a pair of pantyhose from which the legs had been cut. The shade of the hose matched that of the stocking leg mask found in the back of the Cadillac. Based upon this information, the investigators got a warrant for Boone's arrest and then went to the hotel.

During their search of Boone's hotel room, the investigators found a loaded 9 mm handgun, a black plastic bag filled with Damon's credit card receipts, a bank bag, a $1,000 bill, and the restaurant keys. Also in the bag were Patricia Sheppard's wallet, cell phone and car keys, and dark-colored clothing similar to that worn by the robbers. Williams and Boone each had about $1,300 in cash stuffed in their pockets. Police later learned that Boone once worked at Damon's as a dishwasher and thus would have known of the surveillance camera in the restaurant's kitchen.

James Courtney was also arrested. He gave a statement acknowledging that he knew Boone and Williams had planned to commit a robbery at Damon's. He also gave police his one-third share of the robbery proceeds, $1,390, explaining that Williams and Boone had asked him to keep this money for them. Courtney's statement was admitted into evidence. Courtney, who testified at trial and denied any involvement in the robbery, was also cross-examined with respect to his prior inconsistent statements.

This evidence was sufficient to enable rational jurors to find Williams guilty on all counts beyond a reasonable doubt. See *Jackson v. Virginia*, supra.

2. Williams contends the trial court erred in admitting the testimony of an investigating officer whose name was not on the state's formal witness list. Williams, however, voiced no objection when the officer testified. Thus, the error was not preserved for our review. *Lockleer v. State*, 188 Ga. App. 271, 272-273 (3) (372 SE2d 663) (1988). Although one of Williams' co-defendants objected, that objection did not inure to Williams' benefit because he did not join in it. "[W]here a defendant does not expressly adopt the objection of a co-defendant, he thereby waives that objection and may not utilize it to gain review." *Barnes v. State*, 168 Ga. App. 925, 926 (2) (310 SE2d 777) (1983).

3. Williams also argues that the trial court erred in admitting the statement of co-defendant James Courtney on the basis that the statement was obtained in violation of Courtney's constitutional rights. Pretermitting whether Courtney's statement was lawfully obtained, Williams has no standing to challenge the statement's admission against him or Courtney on this basis. "Constitutional

rights are generally considered to be personal to the accused, and they must be asserted by the one whose rights were actually infringed." *Lemley v. State*, 245 Ga. 350, n. 1 (264 SE2d 881) (1980). "The only person with standing to complain of the admission of fruits gained from an illegally obtained confession would be the person who made the confession." *Sims v. State*, 243 Ga. 83, 85 (2) (252 SE2d 501) (1979); *Chance v. State*, 172 Ga. App. 299, 304 (8) (322 SE2d 741) (1984).

4. Finally, Williams argues the trial court erred in denying his motion for a directed verdict on the basis that several counts alleged in the indictment merged because the same facts were used to prove those counts. However, a defendant is not entitled to a directed verdict simply because the offenses charged may merge.

"When the same conduct of an accused may establish the commission of more than one crime, the accused may be *prosecuted* for each crime. He may not, however, be *convicted* of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." (Emphasis supplied.) OCGA § 16-1-7 (a); *State v. Estevez*, 232 Ga. 316, 320 (2) (206 SE2d 475) (1974). Thus, Williams' "argument confuses the jury's role in criminal trials with that of the trial court. Under Georgia law, the jury has the responsibility to give a general verdict of guilty or not guilty. Conviction is not the verdict; it is the judgment on the verdict or guilty plea. Therefore, although OCGA § 16-1-7 (a) provides that one cannot be 'convicted' of more than one crime arising from the same conduct, this Code section has no application to the verdict. [Cit.] The jury must first find a defendant guilty of more than one such offense before the court has the opportunity to merge the offenses under OCGA § 16-1-7 (a)." (Punctuation omitted.) *Sartin v. State*, 223 Ga. App. 759, 761-762 (4) (479 SE2d 354) (1996). Accordingly, the trial court did not err in denying the motion for a directed verdict. *Hill v. State*, 183 Ga. App. 654, 657 (4) (360 SE2d 4) (1987) (physical precedent only).

We do not address the merger issue because Williams enumerated as error the denial of his motion for a directed verdict (to which he was not entitled) and *not* whether the trial court should have merged any of his convictions upon sentencing. This Court lacks jurisdiction to consider inadequately enumerated grounds. OCGA § 5-6-40; *Meeks v. State*, 178 Ga. App. 9, 14 (4) (341 SE2d 880) (1986). Moreover, even had Williams properly enumerated that issue on appeal, we would decline to address it because Williams failed to properly preserve the merger issue for our review. It was incumbent upon Williams to make objection at sentencing or to make a proper motion at sentencing if sentenced in violation of OCGA § 16-1-7. Id.

Williams has not provided us with a transcript of the sentencing hearing nor made any reference to that proceeding. There is no evidence in the record that Williams raised the merger issue or objected to the sentences imposed at the time of sentencing or in his motion for new trial. There is no evidence that he made a motion in arrest of judgment. Because no proper objection or motion was made, the issue was not properly raised below. *Hill*, supra at 657 (4); see also *Edmonson v. State*, 212 Ga. App. 449, 451 (3) (442 SE2d 300) (1994). Consequently, we would "not reach the merits, for errors which raise issues for the first time in a motion for new trial or on appeal present nothing for review." (Punctuation omitted.) *Alonso v. State*, 190 Ga. App. 26, 30 (7) (378 SE2d 354) (1989). See also *Harrison v. State*, 201 Ga. App. 577, 582 (5) (411 SE2d 738) (1991).

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED JULY 1, 1998.

*Stanley C. House*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.