## A01A0782. BOONE v. THE STATE.
### (549 SE2d 713)

JOHNSON, Presiding Judge.

Donnie Lee Boone, Jr. appeals his convictions of armed robbery (two counts), kidnapping (four counts), aggravated assault (two counts), and possession of a firearm during the commission of a crime (four counts). He was tried by a jury with co-defendants Robert Williams and James Courtney. Boone challenges his convictions with 16 enumerations of error. With the exception of his enumeration of error regarding the trial court's aggravated assault charge to the jury, Boone's remaining enumerations of error lack merit. We therefore reverse Boone's convictions for aggravated assault and remand the case for a retrial on the aggravated assault counts. We affirm Boone's other convictions.

1. On appeal we view the evidence in a light most favorable to support the jury's verdict, and the appellant no longer enjoys the presumption of innocence.[1] In addition, we do not weigh the evidence or determine witness credibility; we only determine whether, after viewing the evidence in this light, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.[2] Viewed in this light, the record reveals the following facts.

Around 11:00 p.m. on June 26, 1994, Damon's Restaurant in Augusta, Richmond County, was robbed. Shortly after completing her closing duties, employee Patricia Sheppard left the restaurant through the back door. She got into her car and drove it behind the restaurant and parked next to the dumpster. As she was removing a box from the trunk of her car and throwing it into the dumpster, a man came up behind her. The man grabbed her, put a gun to her head, and ordered her back inside the restaurant. As Sheppard was being pushed toward the door, she noticed another man getting inside her car. Because Sheppard could not open the back door, she knocked on it until her co-worker, Darean Jordan, unlocked the door

---

[1] *Williams v. State*, 233 Ga. App. 217 (1) (504 SE2d 53) (1998).
[2] Id.

and let her in. The robber pushed Sheppard inside the building, demanding that she keep walking. He took Jordan's keys and ordered them to take him to the safe or he would shoot them. Sheppard noticed that another man followed them into the restaurant. She saw this man throw a towel over the surveillance camera — a camera that would not have been visible upon entry. The robbers ordered Jordan and three other employees — Michael Vidal, Sarah Romeo, and Daniel Troup — to move into the office. Sheppard managed to slip away during the commotion and hide in another part of the restaurant.

Upon entering the office, the robbers told Romeo to put the evening's proceeds into a plastic bag the robbers had brought with them. The robbers took the evening's $7,000 in receipts, which consisted of cash (including a $1,000 bill), several rolls of quarters, and numerous credit card receipts. After filling the bag, one of the robbers grabbed Romeo by the arm and said, "You're going with me." He told the other employees not to move or he would shoot Romeo. On their way out of the restaurant, the robbers locked Romeo in a closet with the restaurant keys. In addition to the evening's receipts, the robbers took Sheppard's Cadillac, her purse, and her cell phone. The employees could not identify the robbers. The two men who were observed inside the restaurant were described only as African-American males wearing dark clothing and stocking masks.

Shortly after 11:00 p.m., Jay Watkins, a man who resided near the restaurant, noticed a two-door silver-gray car parked along the road with its interior light on. As he drove by the car, he noticed that the driver's door was ajar and that the driver was standing outside the car. His suspicions aroused, Watkins wrote down the car's tag number. Fifteen minutes later, on his way back home, he noticed a Cadillac with its trunk open abandoned in the same area. Watkins also wrote down the tag number of this car. When he returned home, he called the police. The police determined that the abandoned Cadillac was Sheppard's. They found a roll of quarters and a stocking mask in the Cadillac.

Suspecting that the silver car may have been involved in the robbery, the police located the car's owner, Valerie Davis, and obtained a warrant to search her car and her residence. The police found a 9 mm bullet, a wallet belonging to Donnie Boone, and a large number of quarters in Davis' car. They found five $20 bills in her purse. Davis told police and testified at trial that she received the money from Boone, her cousin. She loaned her car to Boone that evening so that he and his friends, Williams and Courtney, could go out. Davis also said that she, Boone, Williams, and Courtney had spent the afternoon together, visiting at the home of Michelle Dunn. Around midnight, Boone returned Davis' car to her at Dunn's house. Davis then

drove Boone to a hotel. When she dropped him off, she saw Williams leaning over the second floor balcony of the hotel.

The police then spoke with Dunn, Courtney's girlfriend, who confirmed in part Davis' account of the evening. Upon a consent search of Dunn's residence, the investigators found a pair of pantyhose from which the legs had been cut. The shade of the hose matched that of the stocking mask found in the back of the Cadillac. Based upon this information, the investigators got a warrant for Boone's arrest and then went to the hotel.

During their search of Boone's hotel room, the investigators found a loaded 9 mm handgun, a black plastic bag filled with credit card receipts from Damon's Restaurant, a bank bag, a $1,000 bill, and the restaurant keys. Also in the bag were Sheppard's wallet, cell phone, and car keys and dark-colored clothing similar to that worn by the robbers. Boone and Williams each had about $1,300 in cash stuffed in their pockets. Police later learned that Boone once worked at Damon's Restaurant as a dishwasher and thus would have known of the surveillance camera in the restaurant's kitchen.

Courtney was also arrested. He gave a statement acknowledging that he knew Boone and Williams had planned to rob the restaurant. He also gave police his one-third share of the robbery proceeds, $1,390, explaining that Boone and Williams had asked him to keep this money for them. Courtney's statement was admitted into evidence. Courtney, who testified at trial and denied any involvement in the robbery, was also cross-examined with respect to his prior inconsistent statements.

Although Boone and his mother testified that Boone was at his mother's house during the time of the robbery, this Court does not weigh the evidence or assess witness credibility. The evidence presented was sufficient to enable rational jurors to find Boone guilty on all counts beyond a reasonable doubt.[3]

2. Boone argues the trial court erred in allowing the state to introduce Courtney's out-of-court statement without properly redacting the statement and in allowing the state to cross-examine Courtney using the name of his two alleged accomplices. We find no error.

In *Bruton v. United States*,[4] the United States Supreme Court held that a defendant's Sixth Amendment right of confrontation is violated when: (a) co-defendants are tried jointly; (b) one co-defendant's statement is used to implicate the other co-defendant in the crime; and (c) the co-defendant who made the implicating state-

---

[3] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Williams*, supra.

[4] 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

ment employs his Fifth Amendment right not to testify and thus does not take the stand to face cross-examination about the statement.[5] Thus, while the confession of a co-defendant normally cannot be admitted against another defendant at a joint trial, this rule applies only where the co-defendant does not testify and is not available for cross-examination.[6]

Boone's enumeration of error is meritless. Once Courtney took the stand and answered questions concerning his statement, even if he denounced or recanted his statement, he was subject to cross-examination by Boone, and the *Bruton* rule did not apply.[7]

3. Boone contends the trial court erred in permitting testimony which he claims injected his character into evidence. However, the record reveals that Boone never objected to the testimony on this ground. It is well established that a party must object to alleged improprieties when they occur to allow the trial court an opportunity to take remedial action.[8] Failure to do so results in a waiver of the right to urge error on appeal.[9] Because Boone failed to object to the admission of this evidence on the ground asserted as error, he has waived his right to claim error.

4. Boone claims the trial court erred in denying his motion for new trial on the ground that the state failed to disclose a promise of leniency made to Courtney in exchange for his trial testimony. We disagree.

The record reveals that Courtney repeatedly told the jury that he made his out-of-court statement to the officers in exchange for their promise to assist him in obtaining pretrial release on bail. However, Boone fails to point to any other evidence showing that the officers offered Courtney any consideration in exchange for his statement. And, there is no evidence in the record showing that Courtney's testimony at trial, repudiating his out-of-court statement, was given pursuant to a promise of leniency. In fact, Courtney admitted that he had been given the opportunity to plead to a less severe offense than armed robbery if he decided to testify against his co-defendants. This offer was rejected, and Courtney went to trial, repudiating his out-of-court statement. Clearly, even if the state made a promise of leniency to Courtney if he testified against his co-defendants, Courtney did not accept such a promise, and his credibility based on such a promise was not at issue.

---

[5] *York v. State*, 242 Ga. App. 281, 284 (2) (528 SE2d 823) (2000).

[6] *House v. State*, 237 Ga. App. 504, 507 (3) (515 SE2d 652) (1999); see also *In the Interest of J. B.*, 223 Ga. App. 429, 432 (2) (477 SE2d 874) (1996).

[7] *Haynes v. State*, 269 Ga. 181, 182 (2) (496 SE2d 721) (1998); *Depree v. State*, 246 Ga. 240, 242 (1) (271 SE2d 155) (1980).

[8] *Ward v. State*, 238 Ga. App. 540, 542 (2) (519 SE2d 304) (1999).

[9] Id.; *Clark v. State*, 236 Ga. App. 153, 155 (2) (510 SE2d 907) (1999).

Boone has adduced no evidence of any deal or other arrangement with Courtney that might have caused the jury to view his testimony in a different light.[10] The record clearly shows that Courtney took the stand, repudiated his out-of-court statement, and denied all culpability in connection with the incident. The trial court's finding was authorized, and there was no due process violation.[11]

5. Boone contends the trial court erred in denying his motion for new trial because one of the jurors allegedly gave false testimony during the selection process. At the hearing on Boone's motion for new trial, one of his witnesses testified that he heard the juror say during voir dire that he did not know the prosecuting attorney, but later heard the same juror say he had known the prosecuting attorney for about a year. No other evidence regarding this issue was presented.

It is axiomatic that hearsay testimony is not only inadmissible, but is wholly without probative value, and its introduction does not give it any weight in establishing a fact.[12] Testimony is considered hearsay if the witness is testifying to another party's statement in order to prove or demonstrate the truth of the matter asserted in that statement.[13] Since the juror who allegedly made the statements to the witness was not called to testify at the hearing on the motion for new trial, the statements constituted hearsay and could not authorize the grant of a new trial.[14] Therefore, the trial court did not abuse its discretion in refusing to grant the motion on this ground.

6. Boone contends the trial court erred in denying his motion for new trial on the ground that the motion to suppress evidence taken from his cousin's car should have been granted. However, the record shows that Boone had no ownership or proprietary interest in the car that was searched. Thus, he had no standing to complain of the search and the resulting seizure of evidence from the search.[15]

7. Boone argues that the trial court erred in sentencing him on counts of aggravated assault, kidnapping, and armed robbery because these counts merged with other counts. We disagree.

The record reveals that Boone's conviction for armed robbery (Count 1) against Sheppard was based on evidence showing that the robbers took her car from her at gunpoint when she exited the restaurant. The kidnapping charge (Count 2) was predicated on the fact that the robbers marched Sheppard back into the restaurant at gun-

---

[10] Compare *Dinning v. State*, 266 Ga. 694, 696-697 (2) (470 SE2d 431) (1996).

[11] See *Klinect v. State*, 269 Ga. 570, 572 (2) (501 SE2d 810) (1998).

[12] *In re Burton*, 271 Ga. 491, 494 (3) (521 SE2d 568) (1999).

[13] Id.

[14] *Kodadek v. Lieberman*, 247 Ga. App. 606, 611 (3) (545 SE2d 25) (2001).

[15] *Banks v. State*, 262 Ga. 190, 192 (5) (415 SE2d 634) (1992); *Keishian v. State*, 202 Ga. App. 718 (415 SE2d 324) (1992).

point. The aggravated assault (Count 4) and kidnapping (Count 5) charges concerning Jordan were based on evidence showing that the robbers pointed a gun in his face and then forced him to walk into another room in the restaurant. With regard to Romeo, the armed robbery offense alleged in Count 7 was founded on her testimony that she was forced at gunpoint to surrender the restaurant's receipts to the robbers. She likewise was compelled by the robbers to move from place to place in the restaurant, conduct forming the basis of the kidnapping charge in Count 8. The aggravated assault (Count 10) and kidnapping (Count 11) charges concerning Troup were based on his testimony that the robbers placed a gun at his back and threatened him. They also forced him to move about the restaurant.

The evidence shows that all of the offenses charged were separate and supported by different facts. Accordingly, they did not merge as a matter of fact or law.[16]

8. The trial court did not err in refusing to sever the trial of Boone's case from that of his co-defendants. The decision of whether to sever was within the trial court's discretion, and we will not disturb that ruling absent a showing of clear abuse of that discretion.[17] Boone argues that he was prejudiced by Courtney's out-of-court statement. However, Courtney testified at trial, allowing Boone the opportunity to cross-examine him concerning both his trial testimony and his out-of-court statement.[18] We find no abuse of discretion in the present case.[19]

9. Boone contends the trial court erred in allowing an investigator whose name was not on the list of witnesses furnished by the state to testify at trial. In support of this argument, Boone relies on OCGA § 17-7-110, which dealt with permitting witnesses not listed to testify.[20] The purpose of OCGA § 17-7-110 was to insure that an accused was not confronted at trial with testimony against him from a witness whom he had not had an opportunity to interview prior to trial.[21] In the present case, the purpose of the statute was not thwarted, and Boone was not harmed, since Boone was given open access to the state's file and the investigator's name and reports were included in the file.[22] Contrary to Boone's assertion, exclusion of the

---

[16] See OCGA § 16-1-7; *Emmett v. State*, 199 Ga. App. 650, 651-652 (3) (405 SE2d 707) (1991); *Helton v. State*, 166 Ga. App. 662, 663 (1) (305 SE2d 592) (1983).

[17] OCGA § 17-8-4.

[18] See *Belcher v. State*, 207 Ga. App. 117 (1) (427 SE2d 88) (1993).

[19] See *Rooks v. State*, 238 Ga. App. 177, 181-182 (4) (518 SE2d 179) (1999); *Montijo v. State*, 238 Ga. App. 696, 699-702 (3) (520 SE2d 24) (1999).

[20] It should be noted that this statute was repealed effective January 1, 1995.

[21] *Grace v. State*, 210 Ga. App. 718, 721 (5) (437 SE2d 485) (1993); *Griffin v. State*, 183 Ga. App. 386, 388 (3) (358 SE2d 917) (1987).

[22] See generally *McLarty v. State*, 238 Ga. App. 27, 29 (2) (516 SE2d 818) (1999).

investigator's testimony was not mandatory under OCGA § 17-7-110 "where the trial judge in his discretion determine[d] that the defendant can be protected by some other form of relief."[23] Moreover, where the trial court has determined not to exclude the testimony of a witness whose name was not listed on the witness list, proper remedies include requests for a continuance or a mistrial.[24] Here, no continuance was requested when the trial judge, in the exercise of his discretion, overruled Boone's motion to exclude the investigator's testimony, concluding that Boone was not surprised by the witness and had ample opportunity to interview him prior to trial. We find no error.

10. The trial court did not err in refusing to allow Boone to act as co-counsel with his attorney during the hearing on his motion for new trial. Essentially, Boone argues that both he and his attorney should have been able to participate in the hearing on his motion for new trial. We disagree, since the right to such hybrid representation has been abolished in Georgia.[25]

11. Boone maintains that the trial court erred during the trial in not requiring the court reporter to take down certain bench conferences, objections to closing arguments, questions from the jury, and the court's responses to jury questions. In felony cases, it is the duty of the trial judge to direct the recordation of the trial proceedings, including "all motions, colloquies, objections, rulings, evidence, . . . and all other proceedings which may be called in question on appeal."[26] However, Boone has not attempted to demonstrate any harm or prejudice resulting from this failure to record.[27] Nor has Boone fulfilled his duty to have the record completed by reconstruction pursuant to OCGA § 5-6-41. Where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f).[28] When this is not done, there is nothing for us to review.[29]

The record on appeal reveals that Boone filed a motion to enlarge the record on appeal and the trial court ordered the court reporter to transcribe the requested matters. The court reporter replied that she could not do so because the matters were not taken

---

[23] *Davis v. State*, 135 Ga. App. 203, 207 (3) (217 SE2d 343) (1975).

[24] *Grace*, supra.

[25] *Cargill v. State*, 255 Ga. 616, 622 (3) (340 SE2d 891) (1986); *Jones v. State*, 171 Ga. App. 184, 185-186 (2) (319 SE2d 18) (1984).

[26] OCGA § 5-6-41 (a), (d).

[27] See *Ramsay v. State*, 220 Ga. App. 618, 626 (13) (469 SE2d 814) (1996).

[28] See *Mapp v. State*, 204 Ga. App. 647, 648 (2) (420 SE2d 615) (1992).

[29] *Ivory v. State*, 199 Ga. App. 283, 284 (1) (405 SE2d 90) (1991).

down. Boone made no further attempts to create a supplemental record.

Although Boone contends the trial court erred by failing to hold a hearing on this issue, in the absence of disagreement, the trial court was not required to "set the matter down for a hearing with notice to both parties and resolve the difference."[30] And the record does not show any attempt by Boone to meet with the state and augment or supplement the record to include the nontranscribed matters. We cannot determine that any harm was done by the failure to record the noted bench conferences, objections to closing arguments, questions from the jury, and the court's responses to those questions because Boone has not had the record completed by reconstruction, pursuant to OCGA § 5-6-41 (f). To warrant reversal for the failure to record particular proceedings, "the party asserting error must show it by the record."[31] Under these circumstances, Boone has shown no grounds for reversal.[32]

12. Boone contends his convictions should be set aside because the delay in the transcription and filing of the trial transcript resulted in his failure to locate and subpoena a witness. We have consistently held that the mere passage of time is not enough, without more, to constitute a denial of due process.[33] To prevail, Boone must show that he was prejudiced by the delay.[34]

While Boone argues in his appellate brief that the delay caused him to be unable to locate and subpoena a witness, he fails to point to any evidence in the record substantiating this claim. We cannot consider allegations of error in the brief of a party which are not supported by evidence in the record.[35] Furthermore, Boone has failed to provide this Court with any indication of the contents of the absent witness' testimony. A proffer of what the excluded evidence would have shown is necessary to afford a basis for an assertion of error.[36] Since Boone has not made the requisite showing of prejudice, the delay in filing the transcript is not adequate grounds on which a new trial should be granted.[37]

13. Boone lists two separate enumerations of error under subsection 13 of his brief.

(a) First, he contends his convictions should be set aside because the state intentionally withheld from him the clothing he was wear-

---

[30] OCGA § 5-6-41 (f); *Turner v. State*, 226 Ga. App. 348, 349 (1) (486 SE2d 639) (1997).
[31] (Citations and punctuation omitted.) *Mapp*, supra.
[32] See *Ramsay*, supra.
[33] *Proffitt v. State*, 181 Ga. App. 564, 566-567 (3) (353 SE2d 61) (1987).
[34] *Cowan v. State*, 243 Ga. App. 388, 396 (9) (531 SE2d 785) (2000); *Proffitt*, supra.
[35] *Causey v. State*, 215 Ga. App. 723, 726 (9) (452 SE2d 564) (1994).
[36] Id.
[37] *Proffitt*, supra.

ing at the time of his arrest, and this clothing did not match the clothing described by the witnesses to the robbery. However, Boone does not support this enumeration of error in his brief with a single citation to the record or to authority. In addition, he does not indicate any place in the record where he requested or subpoenaed the clothing. The burden is always on the appellant in asserting error to show it affirmatively by the record.[38] Boone has not met this burden, and it is not the function of this Court to cull the record on behalf of a party in search of instances of error.[39] Thus, we find that this enumeration of error lacks merit.

(b) Boone also contends the state improperly informed a victim that although the victim saw only two robbers, there were actually three participants. Boone claims that, but for the state's comment regarding the number of robbers, the victim would have told police that Boone was not one of the robbers. First of all, Boone has failed to show that the state's comment to the victim was, in the words of Boone, "purposeful misconduct" or improper. Secondly, Boone has failed to show that he was unable to question the victim regarding his identification of the robbers. We find no error.

14. Boone contends the trial court erred in charging the jury on the law of assault, conspiracy, and theft by receiving because these charges were not contained in the indictment.

(a) The trial court did not err in defining assault for the benefit of the jury and in explaining the essential elements of aggravated assault. In fact, this Court has on one occasion held that the trial court is required to do so in cases of this nature.[40]

(b) The facts of the case show that the co-defendants were clearly acting in concert in perpetrating this crime. Such coordinated conduct justified the inference that there was a pre-existing agreement or conspiracy to commit the act before it occurred. "It is not error to charge on the subject of conspiracy when the evidence tends to show a conspiracy, even if a conspiracy is not alleged in the indictment."[41] A charge on the law of conspiracy was authorized by the evidence.

(c) The trial court set forth the elements of theft by receiving stolen property in its charge even though none of the defendants were accused of that crime. While the charge would have been clearer and more concise had the trial court not instructed the jurors on this unindicted offense, we find no harmful error.

At the outset of the charge, the trial court informed the jurors

---

[38] *Melton v. State*, 222 Ga. App. 555, 559 (6) (474 SE2d 640) (1996).

[39] Id.

[40] *Smith v. State*, 140 Ga. App. 395, 396 (1) (231 SE2d 143) (1976).

[41] (Citation omitted.) *Holmes v. State*, 272 Ga. 517, 519 (6) (529 SE2d 879) (2000); *Wiley v. State*, 238 Ga. App. 334, 335 (4) (519 SE2d 10) (1999).

regarding the crimes of which the defendants were being tried. And, at the conclusion of the charge, the trial court specifically directed the jurors' attention to the various crimes set forth in the indictment. At no point did the trial court ever tell the jurors that they were authorized to convict any defendant of the crime of theft by receiving stolen property. "[A]n erroneous charge touching on a matter not in issue under the evidence, unless prejudicial or harmful as revealed by the entire record, does not require or demand reversal."[42] We find no prejudice sufficient to demand a new trial.

15. The trial court's charge to the jury regarding reasonable doubt was not error. In its jury instructions, the trial court charged the jury that the defendants were presumed innocent. The trial court then charged as follows:

> This presumption remains with the Defendants until it is overcome by the State with evidence which is sufficient to convince you beyond a reasonable doubt that the Defendants are guilty of the offense charged. No person shall be convicted of any crime unless until [sic] each element of the crime is proven beyond reasonable doubt. The burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt. There is no burden of proof upon the Defendants whatever and the burden never shifts to the Defendants to prove their innocence. However, the State is not required to prove the guilt of accused beyond all doubt or to a mathematical certainty. A reasonable doubt means just what it says. It is a doubt of a fair-minded, impartial juror honestly seeking the truth. It is a doubt based upon common sense and reason. It does not mean a vague or arbitrary doubt, but is a doubt for which a reason can be given arising from a consideration of the evidence, a lack of evidence, a conflict in the evidence, or a combination of these things. If after giving consideration to all the facts and circumstances of the case, your minds are wavering, unsettled, or unsatisfied, then that is the doubt of the law and you should acquit the Defendants. But if that doubt does not exist in your minds as to the guilt of the accused, then you would be authorized to convict the Defendants. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendants' guilt. There are very few things in the world that we know with absolute certainty,

---

[42] (Citation omitted.) *Byrd v. State*, 186 Ga. App. 446, 450 (4) (b) (367 SE2d 300) (1988).

and in criminal cases the law does not require proof that overcomes every possible doubt. If based on your consideration of the evidence you are firmly convinced that the Defendants are guilty of the crimes charged, you must find them guilty. If on the other hand you think there is a real possibility that they are not guilty, you must give them the benefit of the doubt and find them not guilty. If the State fails to prove the Defendants' guilt beyond a reasonable doubt, as I just stated, it will be your duty to acquit the Defendants.

Boone contends the trial court erred in authorizing the jury to convict if it was "firmly convinced" he was guilty and in authorizing the jury to find him not guilty if there was a "real possibility" he was not guilty. We find no error sufficient to require reversal.

Contrary to Boone's assertion, the language charged by the trial court in the present case is not like the improper language found in *Ward v. State*.[43] In *Ward*, the Supreme Court found that the trial court improperly lowered the state's burden of proof when it charged the jury that the defendants could be found guilty or not guilty depending on what the jurors "honestly believed." The charge in the present case does not suffer from the infirmity condemned in *Ward*.

Here, the jury was not instructed that it was authorized to convict Boone if, after balancing the evidence for themselves, they concluded that the state's evidence of guilt was more persuasive than Boone's evidence introduced in his defense.[44] Rather, the trial court repeatedly emphasized the state's burden of proving guilt beyond a reasonable doubt and informed the jury that they must be "firmly convinced" that Boone was guilty of the crimes charged before rendering a guilty verdict. There was no reversible error because the charge viewed in its entirety repeatedly and accurately conveyed to the jury the concept of reasonable doubt.[45]

16. Boone contends the trial court erred in its charge on aggravated assault because even though he was indicted for aggravated assault by use of a handgun, the trial court instructed the jury that intent to murder, rape, or rob are alternative methods by which a person commits aggravated assault. We agree that this was error.

OCGA § 16-5-21 (a) provides that aggravated assault is committed when a person (1) assaults with intent to murder, rape, or rob; (2) assaults with a deadly weapon or with any instrument which, when

---

[43] 271 Ga. 62, 63-64 (2) (515 SE2d 392) (1999).
[44] See id. at 64.
[45] See *York,* supra at 290 (5) (a); *Mitchell v. State*, 225 Ga. App. 26, 28-29 (2) (482 SE2d 419) (1997).

used offensively against a person, is likely to or actually does cause serious injury; or (3) discharges a firearm from a motor vehicle toward a person.

The state alleged in the indictment that Boone assaulted two victims by abducting the victims at gunpoint. The type of assault alleged in the indictment would come within part (2) of OCGA § 16-5-21 (a). However, in its charge to the jury, the trial court recited both parts (1) and (2) of OCGA § 16-5-21 (a). The trial court further charged the jury: "The intent to murder or rape or rob is a material element of an aggravated assault as charged in this case," and then detailed what the jury could consider when passing on the question of intent.

Boone contends that the trial court erred in giving this charge because the jury may have convicted him of the alternate manner of aggravated assault, namely, assault with intent to murder, rape, or rob. To support his argument, he points to testimony from the victims that when the robber entered the restaurant with the gun, he told one of the victims to take him to the safe or he would shoot the victim, and he told the victims to give him the money. According to Boone, the jury could have concluded from this evidence that the offense of aggravated assault was committed with the intent to murder (he was going to shoot the victim) or to rob (he demanded that the victims give him the money).

The giving of a jury instruction which deviates from the indictment violates due process where there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment.[46] In the present case, while the trial court directed the jury's attention to the indictment, no limiting instruction was given. Moreover, the trial court erroneously charged the jury that intent to murder, rape, or rob was a material element of the aggravated assault charges in the case. Clearly there was sufficient evidence from which the jury could conclude that the victims were assaulted with the intent to murder or rob — allegations not contained in the indictment. Accordingly, Boone's due process rights were violated by the jury charge given by the trial court.[47] Boone is entitled to a new trial on the aggravated assault counts, and we hereby remand this case for a new trial on these counts.

*Judgments affirmed in part and reversed in part. Case remanded with direction. Ruffin and Ellington, JJ., concur.*

---

[46] *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999).

[47] Id.; compare *Thomas v. State*, 268 Ga. 135, 141 (17) (485 SE2d 783) (1997); *Johnson v. State*, 245 Ga. App. 761-762 (1) (538 SE2d 850) (2000).

DECIDED MAY 7, 2001 —
RECONSIDERATION DENIED JUNE 19, 2001.

*Sam B. Sibley, Jr.,* for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.