**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 3, 2018**

# In the Court of Appeals of Georgia

A18A0395. PATE v. BRIAN SADLOCK.

A18A0396. PATE v. BRIAN SADLOCK.

A18A0397. PATE v. HAROLD SADLOCK et al.

PHIPPS, Senior Appellate Judge.

Following a joint hearing in three cases concerning visitation and custody of the children of Julie Pate and Brian Sadlock, the trial court issued a combined interlocutory order regarding, among other things, grandparent visitation rights for the summer of 2017, reunification therapy for the father, and therapists for the children. The mother appeals from the combined order and raises five enumerations of error. For the reasons that follow, we affirm.

The three records show that in North Carolina in January 2013, Pate and Sadlock entered into a consent order regarding child custody and support of their two

children, who were born in August 2009 and July 2011, respectively; the parties also agreed to certain visitation rights for the paternal grandparents, who had intervened in the matter. Among other things, the consent order gave joint legal custody to the parents, primary physical custody to the mother, certain visitation rights to the father, and one week of visitation for the paternal grandparents each summer beginning in 2013. In May 2016, after both parents had moved to Georgia, the parents domesticated the North Carolina consent order in the Superior Court of Fulton County.

In July 2016, the mother filed a petition in Fulton County against the grandparents, who live in New Hampshire, for modification of their summer visitation week, based in part on the father's then-recent arrest on charges of aggravated sexual battery on one of the children, as well as other allegations of inappropriate behavior by the father with regard to the children. The mother asked that the grandparents' visitation rights "be revisited, reviewed and modified on a temporary and permanent basis" and that their "visitation for summer 2016 be suspended pending further investigation of [the court]." The mother requested an expedited hearing on the matter. The grandparents answered and filed a counterclaim, later amended, for contempt of their visitation rights in 2016, for an order denying

2

any modification of their rights, for an alternative period to make up for the missed week of visitation in the summer of 2016, for additional regular visitation with the children while the father was unable to do so due to bond conditions in his criminal matter, and for other relief. In December 2016, following a hearing, the court entered a temporary order awarding two visitation days to the grandparents during that month, as well as supervised grandparent visitation with the children through reunification therapy on "an ongoing temporary basis."

Meanwhile in September 2016, the mother filed a second petition, this time against the father, seeking to modify the father's visitation rights on a temporary and permanent basis due to the pending criminal charges and other allegations referred to above. The mother requested a temporary and final hearing on the petition. The father answered.

Finally, in March 2017, the father filed a petition for modification of custody or, in the alternative, a modification of his rights to visitation. The father alleged a material change in circumstances, namely that the mother had sought, through a series of actions, to eliminate the father from the children's lives "by creating the impression that Father is dangerous, limiting Father's contact with the children, limiting the children's contact and associations with Father's family, and encouraging the children

3

to refer to [the mother's] new husband as 'Daddy.'" The petition included allegations that the mother actively coached the children to make false statements regarding the father and that she falsely accused the father of sexual abuse of the children. The father asked the court to order the parties and children to undergo a psychological custody evaluation; that the court modify the custody consistent with the children's best interests; and that the father have primary physical custody or, in the alternative, that the court modify visitation consistent with the best interests of the children.

In April 2017, the court issued a combined order in all three cases requiring a "custody evaluation and psychological evaluation" of the mother, father, and grandparents to be performed by Dr. Kim Oppenheimer. In a second combined order, the court addressed the mother's motion to reconsider certain aspects of the December 2016 temporary order, the mother's request for a temporary protective order based on the allegations of the father's sexual abuse, and other matters. The court also appointed Dr. Allison Hill as a reunification specialist and ordered that she begin an evaluation of when and under what circumstances the father should be reunified with his children. The court stated that upon receipt of Dr. Hill's report, the court would conduct a hearing regarding Dr. Hill's recommendations.

Later in April 2017, the grandparents moved for a hearing to address "their summer visitation [for 2017]," including their request to make up for the denied visitation in 2016 by awarding four to six weeks of visitation in the summer of 2017. The grandparents requested, among other things, a "temporary hearing . . . on May 23, 2017, addressing grandparent's 2017 summer visitation." The court set a hearing for that day "on the issues of (1) summer visitation and (2) reunification progress and recommendations." The court added, "This hearing shall last a maximum of three hours."

Prior to the scheduled hearing, the mother moved in limine to bar introduction at the hearing of hearsay regarding any reports, summaries, or oral information "not presented to the Court at a formal hearing." Two weeks before the May 23 hearing, the court-appointed guardian ad litem (GAL) moved in all three cases for modification of the court's December 2016 temporary order and for other clarification and direction regarding certain matters concerning the children. The GAL alleged that

> this GAL is concerned that the children and the possibility of their reunification with the Grandparents is being thwarted by the Mother's failure to follow the recommendations of the reunification therapist and her inability to follow through with the plans created with the assistance of the reunification therapist and this GAL.

5

The GAL was also concerned that the children were not under the care of a child psychologist. The court added the GAL's motion to the matters to be considered on May 23. Prior to that hearing, the mother issued a subpoena to Dr. Hill demanding that she produce for the hearing essentially all documents in her possession related to the matters raised by the parties. The mother also issued a similar subpoena to the GAL. The GAL moved to quash; Dr. Hill did not.

Following the May 23, 2017, hearing, the trial court issued a temporary order applicable to all three cases in which it (1) granted the GAL's motion to quash; (2) declined to enforce the subpoena issued to Dr. Hill; (3) denied the mother's motion in limine; (4) overruled the mother's objection to the length of the hearing; (5) held that the grandparents were authorized to request a modification to their visitation; (6) granted the grandparents four weeks of visitation time during the summer of 2017, with the first two weeks to include reunification therapy with Dr. Hill; (7) ordered reunification therapy for the father; (8) ordered coordination between a therapist for the children and Drs. Hill and Oppenhiemer "to ensure therapeutic consistency for the children"; and (9) scheduled a follow-up status hearing on July 31, 2017, at which the court would consider ongoing observations and recommendations by Dr. Hill, Dr. Oppenheimer, and the GAL "when considering the progress of the case and whether

further modifications of the temporary order are appropriate." The mother appeals from this order in the combined cases.

1. In two enumerations of error, the mother contends that the trial court erred by modifying the grandparents' visitation for the summer of 2017 in contravention of OCGA § 19-7-3.

(a) The grandparents respond that this enumeration of error is moot because the summer 2017 visitation has occurred. See OCGA § 5-6-48 (b) ("Where the questions presented have become moot" the appeal "shall be dismissed."). We agree that the issue of the grandparents' visitation for 2017 is moot. Nevertheless, we address two claims of error related to the visitation ordered that could be repeated by the trial court yet evade review because of the timing of the appeal process. See *White v. Raines*, 331 Ga. App. 853, 854 n. 1 (771 SE2d 507) (2015); *Elgin v. Swann*, 315 Ga. App. 809, 810 (1) (728 SE2d 328) (2012).

(b) The mother argues that the grandparents were not authorized to seek, and the trial court was not authorized to grant, a change of the grandparent visitation provided in the original consent order. The mother further argues that even if the trial court was so authorized, the court failed to apply the correct standard in deciding

7

whether to modify the grandparents' visitation. These issues turn on the meaning of OCGA § 19-7-3, as well as § 19-9-3, upon which the trial court relied in part.

(i) Georgia's "Grandparent Visitation Statute," OCGA § 19-7-3, grants any grandparent the right to seek visitation of a minor grandchild in two ways: (1) by filing an original action for visitation rights; or (2) by intervening in an existing action concerning custody, divorce of the parents or a parent, termination of parental rights or visitation rights, or in certain cases involving adoption. OCGA § 19-7-3 (b) (1); see also *Kunz v. Bailey*, 290 Ga. 361, 362 (720 SE2d 634) (2012). Grandparents may file an "original action" requesting such visitation rights only once during any two-year period and not "during any year in which another custody action has been filed concerning the child." OCGA § 19-7-3 (c) (2). The statute provides no such limitation, however, on how often a grandparent may intervene in an existing qualifying action. Nor does it limit a grandparents' ability to counterclaim for a modification of visitation in response to an action by a parent in which the parent requested that the grandparents' visitation rights "be revisited, reviewed and modified on a temporary and permanent basis" and that their "visitation for summer 2016 be suspended pending further investigation of [the court]." Accordingly, we find no error by the trial court in determining that under the circumstances, the grandparents had

8

the authority to seek, and the court had the authority to grant, a temporary modification of the grandparents' visitation rights. We therefore need not reach the question whether OCGA § 19-9-3 (which provides guidelines for custody considerations between parents, see generally *Stone v. Stone*, 297 Ga. 451 (774 SE2d 681) (2015)) provides authority to the trial court to make a temporary modification of the grandparents' visitation rights, as the trial court held, nor whether the ruling in *Van Leuvan v. Carlisle*, 322 Ga. App. 576, 583 (3) (745 SE2d 814) (2013) (physical precedent only), regarding a trial court's authority to make a temporary ruling on grandparent visitation under OCGA § 19-9-3, is persuasive.

(ii) The Grandparent Visitation Statute further provides, among other things, that the court may grant reasonable visitation rights only "if the court finds by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation." OCGA § 19-7-3 (c) (1). This standard of proof is of constitutional importance. See *Brooks v. Parkerson*, 265 Ga. 189 (454 SE2d 769) (1995) (finding unconstitutional the prior version of the statute that allowed the court to "grant any grandparent of the child reasonable visitation rights upon proof of special circumstances which make such visitation rights necessary to the best interests of the

9

child."). Our Supreme Court held that "state interference with parental rights to custody and control of children is permissible only where the health or welfare of a child is threatened." Id. at 193 (2) (b). "[E]ven assuming grandparent visitation promotes the health and welfare of the child, the state may only impose that visitation over the parents' objections on a showing that failing to do so would be harmful to the child." Id. at 194 (2) (c).[1] "As a result [of *Brooks v. Parkerson*], the Georgia General Assembly amended the Grandparent Visitation Statute to require a finding of harm to the health or welfare of the child before visitation is granted." *Clark v. Wade*, 273 Ga. 587, 595 (III) (544 SE2d 99) (2001); see also *Ormond v. Ormond*, 274 Ga. App. 869, 871 (619 SE2d 370) (2005) ("Because there was no showing that failure to grant visitation to the grandparents would be harmful to the children, the

---

[1] We find nothing in OCGA § 19-9-3 that would allow a trial court to order grandparent visitation based on a different standard. We also reject the grandparents' argument that a modification of existing grandparent visitation time does not require satisfaction of the above standard. Such a procedure would amount to an end run on the constitutional importance underlying the standard imposed in OCGA § 19-7-3 (c) (1).

10

visitation order must be reversed.").[2] And the court is required to make "specific written findings of fact in support if its rulings." OCGA § 19-7-3 (c) (1).

Here, the trial court significantly increased the grandparents' visitation rights for the summer of 2017 without applying the required standard. Although the issue of summer visitation for 2017 is moot, the correct standard should be applied to any future authorized proceedings where the grandparents seek to modify visitation.

2. The mother contends that the trial court committed reversible error when conducting the temporary hearing by limiting the presentation of evidence, over the mother's objection, by not allowing the parties to testify. "[T]he order of presentation of evidence is a matter that rests within the trial court's discretion and will not be controlled in the absence of an abuse thereof." *Farley v. State*, 145 Ga. App. 98, 102 (2) (243 SE2d 322) (1978).

On May 9, 2017, when the trial court set the May 23, 2017 hearing, it indicated that the hearing would "last a maximum of three hours." The mother did not object

---

[2] Compare *Vincent v. Vincent*, 333 Ga. App. 902, 903 (1) (777 SE2d 729) (2015) (OCGA § 19-7-3 (d) "sets out a different standard when the parent of the minor child with whom visitation is sought is incapacitated, incarcerated or deceased, and the grandparent seeking visitation is the parent of such incarcerated, incapacitated or deceased parent"). Here, the grandparents did not allege that their son was incarcerated and there is no indication that the court relied on OCGA § 19-7-3 (d).

11

to the limitation in the two weeks leading up to the hearing or request a continuance. At the beginning of the May 23 hearing, however, the mother objected to the three-hour limitation for the hearing as not being sufficient for "an evidentiary hearing of this magnitude and of the decisions that are being sought to be made today." The court did not rule on the objection, and the mother did not make any proffer of what evidence she intended to put forward. The court then called two witnesses, Dr. Hill and the GAL, whom the parties cross examined, and the court later accepted the deposition of another witness, at the request of the mother. Although the mother now asserts that the court failed to provide an opportunity for the parties to testify, the mother never asked the court to allow them to testify or otherwise indicate that she desired to call the parties as witnesses. She also did not object, obtain a ruling, or proffer any such testimony. "To establish reversible error, a party seeking review of a trial court's ruling excluding testimony must show how the testimony would have benefitted her case." *Landry v. Walsh*, 342 Ga. App. 283, 285 (1) (801 SE2d 553) (2017); see also *Fredericks v. Hall*, 275 Ga. App. 412, 414 (3) (620 SE2d 638) (2005) ("It is the duty of counsel to obtain a ruling on his motions . . . , and the failure to do so will ordinarily result in a waiver.") (citation and punctuation omitted). Accordingly, the mother can show no abuse of discretion.

3. The mother contends the trial court erred by delegating determination of the father's visitation privileges to a third party. In the temporary order on appeal, the trial court accepted Dr. Hill's recommendation that reunification therapy with the father was appropriate. The trial court therefore ordered that the children undergo reunification therapy with the father under Dr. Hill's direct supervision and that the mother comply with Dr. Hill's recommendations:

> Thus, the Court directs that Brian Sadlock be introduced to the children in a therapeutically appropriate manner. At this time, Brian Sadlock's interaction with his children shall be limited to Dr. Hill's office under her direct supervision. Julie Pate is directed to facilitate and comply with the reunification recommendations regarding Brian Sadlock while the children are in her custody.

The mother argues that the order is flawed because it fails to designate specific days, times or frequency for the children's reunification with the father and leaves that decision in the hands of Dr. Hill. To the extent that the issue is not moot, we conclude the trial court did not err.

It is true that "any self-executing change of custody provision that fails to give paramount import to the child's best interests in a change of custody as between parents must be stricken as violative of Georgia public policy." *Dellinger v.*

13

*Dellinger*, 278 Ga. 732, 733 (1) (609 SE2d 331) (2004). Changes in visitation privileges fall within this rule. *Hardin v. Hardin*, 338 Ga. App. 541, 543 (1) (790 SE2d 546) (2016). As the Supreme Court has explained, a trial court must not delegate decisions regarding modification of custody or visitation:

> It is the trial court's responsibility to determine whether the evidence is such that a modification or suspension of custody/visitation privileges is warranted, and the responsibility for making that decision cannot be delegated to another, no matter the degree of the delegatee's expertise or familiarity with the case.

*Wrightson v. Wrightson*, 266 Ga. 493, 496 (3) (467 SE2d 578) (1996). Thus, "[w]hile the expert's opinion may serve as evidence supporting the trial court's decision to modify or suspend visitation, the decision must be made by the trial court, not the expert." *Wrightson*, 266 Ga. at 496 (3). Not all self-executing provisions are invalid, however, and "we must closely examine the nature of any such provision in determining whether it fails to give paramount import to the child's best interests." *Hardin*, 338 Ga. App. at 543 (1) (citation and punctuation omitted).

Here, the trial court ordered reunification therapy for the purpose of the father's reintroduction to the children and required that the therapy occur only in Dr. Hill's office under her direct supervision. Nothing in the order indicates that Dr. Hill was

14

instructed to decide whether to modify visitation privileges or that such a modification would occur in a self-executing manner following the reunification therapy. In fact, the court set a follow-up hearing seven weeks later on the matters addressed in the order and stated that it would be considering Dr. Hill's observations and recommendations "when considering the progress of the case and whether further modifications of the temporary order are appropriate." Thus, although aided by Dr. Hill's recommendations, the court retained control of the decision as to whether the father's visitation should be modified following reunification therapy. *Hardin* is distinguishable. In that case, the trial court's order provided that a transition in custody would automatically follow the completion of therapy without a review by the court regarding the effectiveness of the therapy. *Hardin*, 338 Ga. App. at 545 (1). We therefore find no error. See also *Williams v. Williams*, 301 Ga. 218, 221 (1) (800 SE2d 282) (2017) (where trial court had "required that [the mother's] visitation would occur twice per month at a particular location, a local church, with the days and times for those visits to be arranged by the church, in cooperation with Husband and Wife," the court had not left visitation solely to the discretion of a third party).

4. The mother also contends the trial court erred by declining to enforce her subpoena for records from Dr. Hill. One week prior to the May 23, 2017 hearing, the

15

mother issued to Dr. Hill a subpoena to produce documents at the hearing. During the hearing, the mother requested a ruling on whether Dr. Hill had to produce the requested documents. The court responded that it was "denying the request for her records at this point." The mother responded, "You're granting a motion to quash that hasn't been filed?" The court basically repeated that it was denying the request, and the mother objected. The mother contends the trial court erred, but the mother has not perfected this claim of error by showing any possible harm. She did not make a proffer below of the significance of the information or otherwise show any possible harm arising from the trial court's ruling. Accordingly, there is nothing for this Court to review. *Gardiner v. State*, 264 Ga. 329, 334 (9) (444 SE2d 300) (1994); *Boone v. State*, 250 Ga. App. 133, 140 (12) (549 SE2d 713) (2001).

*Judgment affirmed. Ellington, P. J., and Bethel, J., concur*.

16