**FIRST DIVISION
BARNES, P. J.,
MARKLE and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**April 15, 2026**

# In the Court of Appeals of Georgia

A26A0274, A26A0275. GARRETT et al. v. SANDERSVILLE RAILROAD COMPANY et al.; and vice versa.

BARNES, Presiding Judge.

These companion appeals are taken from the trial court's affirmance of the Georgia Public Service Commission ("PSC")'s approval of the Sandersville Railroad Company's petition to obtain the privately owned land at issue by condemnation. On appeal in Case No. A26A0275, members of the Garrett, Smith, Reed, and Briggs families ("the landowners") argue that the trial court erred in affirming the PSC's decision because the proposed taking is not an authorized "public use" and because the PSC violated the law in making its findings and conclusions. In the cross-appeal, Case No. A26A0274, the Railroad argues that the trial court erred when it stayed the enforcement of its order pending appeal. We affirm in both cases.

A superior court is authorized to reverse or modify the final decision of the PSC only under the circumstances laid out in the Georgia Administrative Procedures Act, OCGA § 50-13-1 et seq., as follows:

> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1)[i]n violation of constitutional or statutory provisions; (2) [i]n excess of the statutory authority of the agency; (3) [m]ade upon unlawful procedure; (4) [a]ffected by other error of law; (5) *[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record*; or (6) [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

OCGA § 50-13-19 (h) (emphasis supplied). "Under the APA, the Commission is the finder of fact and weighs the credibility of the evidence," and the trial court "shall not substitute its judgment for that of the [Commission] if there is any evidence to support its findings." *Ga. Pub. Serv. Comm'n. v. Southern Bell*, 254 Ga. 244, 246 (327 SE2d 726) (1985) (on appeal from a superior court's grant of an interlocutory injunction as to a PSC decision) (citation modified).

2

Thus viewed in favor of the PSC's decision, the record shows that the Railroad is a "short-line" company operating 10 miles of track in Sandersville, about 25 miles from Sparta. The Railroad currently provides switching services connecting businesses to the Norfolk Southern rail system and to the proposed route for the so-called "Hanson Spur," a new line that would run from the Hanson Quarry to the CSXT rail system. The Spur would require a 200-foot swath across the landowners' property, some of which has remained in these families for decades and which they use for living, farming, timber harvesting, hunting, and other recreating.[1]

After an unsuccessful effort to buy the properties, the Railroad asked the PSC for permission to proceed with condemnation[2] in March 2023 for the "public purpose" of economic redevelopment in Hancock County. The Railroad's amended

---

[1] For example, a Smith great-grandmother was born into slavery on property now owned by her descendants, and one of the Garretts has lived on his family's property for 72 of his 76 years.

[2] See Ga. Comp. R. and Regs. 515-16-16-.01 - .03 (repealed as of Oct. 20, 2025) (requiring Commission approval before the filing of a condemnation action concerning the "construction of rail facilities"; if the PSC determines that the condemnation serves a "public purpose," the railroad is authorized to file a condemnation action in superior court).

petition repeated this claim and added the names of several prospective shippers for the Spur.

After the hearing officer required the Railroad to produce documents as to costs, rates, and community support, a hearing was held in November 2023 at which the landowners' expert witness pointed out the lack of any economic feasibility study and drew the conclusion that the Spur would take decades to recover its costs and was not economically feasible. In response, the Railroad's representative provided some capital cost estimates and testified that the company had "a good handle on [its] costs," that he "feel[s] like [he] knows [his] business," and that he just "kn[e]w it's going to work." In the course of the hearing, the Railroad shifted its justification of the Spur from economic development to providing a "channel[] of trade," which amounts to a "public use" under OCGA § 22-1-1 (9) (A) (iii) of the eminent domain statutes, OCGA § 22-1-1 et seq., as amended in 2017. See Ga. L. 2017, § 22, p. 774.

After the conclusion of the hearing, the hearing officer filed an "initial decision" that the Spur was necessary for the accommodation of the Railroad's business, which was "providing the transportation service of connecting industries by rail and connecting rail traffic with larger rail networks." The hearing officer credited

evidence that without the Spur, the Railroad could not offer connections with the CSXT rail system, and that five of its current and prospective customers wanted the service proposed by construction of the Spur. The hearing officer also found that the Spur was "reasonably expected to have cash flow sufficient to continue as an ongoing concern" and that it would amount to a public use, both as an aid in the functioning of a public utility and as a channel of trade.

The PSC affirmed, adopting the hearing officer's decision in its entirety. Both parties filed for judicial review by the Fulton County Superior Court, which also affirmed the PSC's decision, finding (inter alia) that the Spur was necessary for the proper accommodation of the Railroad's business; that the Spur served a "public purpose" because it would provide for the functioning of the Railroad as a utility, "and *separately* because it will open a channel of trade" (emphasis in original); and that the PSC's decision was consistent with the law. The trial court continued its earlier stay of any further condemnation proceedings pending further appeal, however, "out of an abundance of caution" and given "the great impact upon [the landowners] and their homesteads[.]"

The landowners then appealed to the Supreme Court of Georgia, which transferred the cases to this Court. See OCGA § 50-13-20 (providing for appellate "review of any final judgment of the superior court" under the APA). In its transfer order, our Supreme Court specifically found that the landowners had "made no challenge to the constitutionality of any statute, ordinance, or constitutional provision" and that the trial court "did not construe – or perform any independent analysis of the original public meaning of – any constitutional provision[.]" We therefore limit our analysis to the statutory questions ruled on by the trial court. See *Woods v. State*, 310 Ga. 358, 359 (850 SE2d 735) (2020).

## Case No. A26A0275

1. The landowners first argue that the PSC and the trial court erred in finding that the Spur amounts to a "public use" sufficient to justify condemnation. This assertion requires us to consider the extensive statutory context.

Under OCGA § 46-8-120 (a), a railroad is authorized

(1) To reconstruct its lines or tracks, to build one or more additional main tracks, to relocate any line or portions of a line, and to build, as a substitute for trestles, embankments upon which tracks may be laid or to widen cuts where necessary for proper construction or maintenance;

6

(2) For obtaining gravel and other material, to take as much land as may be necessary for the purpose of construction, operation, and maintenance of such road;

(3) To cut any trees that may be in any danger of falling on the tracks or obstructing the right of way, making compensation therefor as provided by law;

(4) To build and maintain such additional depots, tracks, and terminal facilities as may be necessary for the proper accommodation of the business of the company; and

(5) To construct, maintain, and operate tracks for the purpose of connecting two or more lines of railroad operated by the same company not more than ten miles apart.

And under OCGA § 46-8-121, a railroad seeking to construct new facilities on land it does not own "may" acquire the land by condemnation, "provided that the right of condemnation . . . shall not be exercised until the commission, under such rules of procedure as it may provide, first approves the taking of the property."[3]

---

[3] See *Dept. of Transp. v. City of Atlanta*, 255 Ga. 124, 125 (3) (337 SE2 327)(1985) (Art. I, Sec. III, Par. I of the Georgia Constitution, recognizing the state's power of eminent domain, "relates by its own terms to private property" and "serves to ratify the limitation placed upon the state's inherent right of eminent domain by the individual citizens' right to own property").

The principal question posed in this appeal is whether the Railroad's proposed Spur amounts to a "public use," a term from OCGA § 22-1-2, which provides:

> (a) The right of eminent domain is the right of this state, through its regular organization, to reassert, either temporarily or permanently, its dominion over any portion of the soil of this state on account of public exigency and for the public good. . . . Notwithstanding any other provisions of law, except as provided in Code Section 22-1-15 [concerning "blighted property"], neither this state nor any political subdivision thereof nor any other condemning authority shall use eminent domain unless it is for *public use. Public use is a matter of law to be determined by the court and the condemnor bears the burden of proof.*

(Citation modified.) And OCGA § 22-1-1 (9) (A) defines "public use" as including "(i) [t]he possession, occupation, or use of the land by the general public or by state or local governmental entities; (ii) [t]he *use of land for the creation or functioning of public utilities*; [or] (iii) [t]he opening of roads, the construction of defenses, or *the providing of channels of trade or travel*." (Citation modified.) The same statute specifies that "[t]he public benefit of economic development shall *not* constitute a public use." Id. at (9) (B) (emphasis supplied). And OCGA § 22-1-1 (10) defines a "public utility" as

any publicly, privately, or cooperatively owned line, facility, or system for producing, transmitting, or distributing communications, power, electricity, light, heat, gas, oil products, water, steam, clay, waste, storm water not connected with highway drainage, and other similar services and commodities . . . which directly or indirectly serve the public. ... *This term shall also include common carriers and railroads.*

(Emphasis supplied.)

As the landowners concede, "the fact that private interests may benefit from [a] taking does not negate the public character of the condemnation." As our Supreme Court held long ago, moreover, "the public nature of a siding or spur track does not depend on the number of people that it accommodates, or who uses it, but rests upon the fact that everybody who has occasion to use it may lawfully and of right do so." *Harrold Bros. v. Americus*, 142 Ga. 686, 688 (83 SE2d 534) (1914); see also *Hightower v. Chattahoochee I. R.*, 218 Ga. 122, 124-125 (2) (126 SE2d 664) (1962) (even when a railroad had only one prospective customer for a proposed rail line, the Court was required to "keep in mind the prospective as well as the presently planned use" of the railroad's facilities; a trial court did not abuse its discretion in denying the property owner's request for an injunction because "the present benefit of only one industry

9

. . . does not necessarily negative the public character of the use") (quotation marks omitted).

Here, the evidence summarized above was sufficient to support the decisions of the hearing officer, the PSC, and the trial court that the Spur would amount to a "channel of trade" and thus constituted a "public use." Specifically, the Railroad presented evidence that it would allow anyone who contracts with it to use the Spur, that the Spur will offer connection to the CSXT rail network in the area for the first time, and that the Railroad could generate revenue immediately upon completion of the Spur. As we recently repeated,

> [j]udicial review of an administrative decision requires the court to determine that the agency's findings of fact are supported by any evidence and to examine the soundness of the conclusions of law that are based upon the findings of fact. *A reviewing court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.* Our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency.

*Sawnee Elec. Membership Corp. v. Pub. Svc. Comm'n.*, 371 Ga. App. 267, 268-269 (899 SE2d 708) (2024) (affirming the PSC's decision that an electric vehicle charging

station was utilized by only one "consumer" and was permissible under the "large load" exception of the Georgia Territorial Electric Service Act) (citation modified).

As we recently observed in another case requiring deference to a factfinder, "were we to trade places . . . and sit as the trier of fact, we may very well have weighed the evidence differently and reached a different outcome." *Junior v. Graham*, 374 Ga. App. 497, 501 (911 SE2d 241) (2025). But "that is not our job, and we lack the authority to substitute out judgment" for that made by the PSC here. See id. On this record, the PSC did not err when it concluded that the Spur amounted to a "public use" authorizing the PSC to exercise the State's power of eminent domain to condemn the properties at issue. OCGA § 22-1-2 (a). It follows that the trial court did not err in affirming the PSC's decision. *Sawnee Elec.*, 371 Ga. App. at 274 (2) (affirming the trial court and the PSC when there was some evidence to support the PSC's conclusions). The only remaining remedy for the landowners must lie with either the General Assembly, which passed the statutory scheme laid out above, or the public, who elect the members of the PSC charged with applying that scheme. See OCGA § 46-2-1 (a) (providing for the election of five PSC members).

2. The landowners also argue that the Railroad's initial failure to comply with the Commission's subpoena and the hearing officer's failure to "fully enforce" that subpoena "severely diminished" their right to present evidence against the Railroad. The landowners have not pointed to any specific evidence in support of this contention, however, and thus have not shown that they were prejudiced by the hearing officer's handling of the evidence in the case, which included an order that the Railroad produce additional evidence as to costs, rates, and community support. There was no error here. See *Pate v. Sadlock*, 345 Ga. App. 591, 596 (2) (814 SE2d 760) (2018) (mother failed to show an abuse of discretion in a trial court's bar on testimony at hearing when she did not make any proffer of testimony she would have offered).

3. In light of our holdings in favor of the PSC's decision, the landowners' contention that they are owed attorney fees and costs under OCGA § 22-1-12 (1) lacks merit. See id. (authorizing award of "reasonable costs and expenses," including "reasonable attorney [and other] fees," if "[t]he final judgment is that the condemning authority cannot acquire the real property by condemnation").

Case No. A26A0274

12

4. In the companion appeal, which was docketed in this Court before the docketing of the landowners' appeal on the merits, the Railroad argues that the trial court erred when it stayed further proceedings, including the filing of a condemnation petition pursuant to OCGA § 22-1-2 (a), pending appeal.[4]

As our Supreme Court has noted, subsection (d) of OCGA § 50-13-19, governing judicial review of an administrative agency's decision, "provides that filing of a petition for judicial review does not stay the agency decision but that 'the agency may grant, or the reviewing court may order, a stay upon appropriate terms *for good cause shown*.'" *Southern Bell*, 254 Ga. at 247, quoting OCGA § 50-13-19 (d) (emphasis supplied). Here, the trial court was functioning as an appellate court when it reviewed the PSC's decision, and we cannot say that it abused its discretion when it determined that a stay pending appeal was "good cause" under these circumstances, which involve what it assessed as the "great impact" of the PSC's decision on the landowners. See *Green Bull Ga. Partners v. Register*, 301 Ga. 472, 474-475 (801 SE2d 843) (2017) (affirming both the trial court's setting aside of an interlocutory injunction

---

[4] Shortly after docketing in this Court, we denied the Railroad's motion to expedite the appeals and to lift the stay because "the [Railroad] has not shown the existence of extraordinary circumstances that might justify" either remedy.

and its entry of an injunction pending the resolution of an appeal as within its discretion; "that the trial court found the case close enough to warrant an injunction pending appeal – notwithstanding its determination that an interlocutory injunction pending final judgment was not appropriate – is unremarkable").

*Judgments affirmed. Markle and Hodges, JJ., concur.*